[No. B020307. Second Dist., Div. Five. Mar. 17, 1987.]

PATRICIA K. McCALLUM, Plaintiff and Respondent, v.
JAMES W. McCALLUM, Defendant and Appellant.

**COUNSEL**

O'Melveny & Myers, Philip F. Westbrook and Ralph W. Dau for Defendant and Appellant.

Thiessen, Gagen & McCoy, M. Sue Greicar and Michael W. Carter for Plaintiff and Respondent.

## OPINION

**EAGLESON, J.**—We hold that a 1983 application under the Sister State Money Judgment Act (Code Civ. Proc., § 1710.10 et seq.)[1] to enforce three New York money judgments for spousal and child support resulted in a final judgment which is not subject to collateral attack under the Revised Uniform Reciprocal Enforcement of Support Act (§ 1650 et seq.). We therefore reverse the trial court's order denying the motion of appellant James McCallum (Husband) to vacate registration of a foreign support order.

### FACTS AND PROCEDURAL HISTORY

As part of their marital dissolution proceedings, Husband and his wife (Wife) entered into a separation agreement in New York. By its terms, Husband agreed to pay spousal and child support. When he failed to do so, Wife sued for past spousal and child support, and obtained three New York money judgments:

(1) May 22, 1974: Wife was awarded past due support in the amount of $17,880.87. Her attorney, Sweeney, was awarded $750 in attorney's fees.

(2) January 13, 1975: $750 attorney's fees were awarded to her attorney, Sweeney.

(3) September 10, 1975: Wife was awarded $18,396 for spousal and child support. Attorney's fees were awarded to her attorney in the sum of $1,000.

As a result of garnishment proceedings in New York, $17,880.87 of the May 22, 1974, judgment was satisfied. Husband thereafter moved to Los Angeles County, California. Wife also moved to California.

### PROCEEDINGS UNDER SISTER STATE MONEY JUDGMENT ACT (SSMJA)

On October 3, 1983, Wife filed an application for entry of judgment under SSMJA in Los Angeles County (case No. C470273). (§ 1710.10 et seq.) Her claim was predicated on all three New York judgments. Under item 5(a) of the application, she alleged that the "[a]mount remaining unpaid on sister state judgment [is] $2,500." She also requested $95 as the cost of filing the application. There was no breakdown of the items to show how Wife arrived at the $2,500 figure. There also were no labels identifying the claims as attorney's fees, spousal support or child support.

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

On November 18, 1983, Wife filed an amended application under SSMJA which only added Wife's California address. On that same date, an attorney-prepared judgment was signed and entered in Wife's favor against Husband in the amount of $2,500, zero interest, and filing fees in the sum of $92. Husband filed a motion to vacate this judgment which was denied. Wife later acknowledged that she had received a check tendered in full satisfaction of this judgment.

On January 26, 1984, Wife lodged with the court a second amended application for entry of judgment on sister state judgment based on the same three, earlier identified New York judgments (case No. C470273). She now alleged that the amount remaining unpaid on the sister state judgment was $23,276.87, that she incurred a filing fee of $92, and that there was accrued interest on sister state judgment in the amount of $10,685.03. She prayed for a total judgment of $34,053.90. This application was never acted upon by the court, and Wife never pursued the issue.

On March 28, 1985, Wife filed a notice of motion for order reconsidering decision, correcting error in judgment, amending judgment nunc pro tunc and/or consolidating actions (case No. C470273). In this motion, she requested a nunc pro tunc amendment of the SSMJA judgment entered earlier on November 18, 1983, in the following manner: (a) John J. Sweeney, her New York attorney, be added as plaintiff; (b) the amount of the judgment be changed from $2,500 to $21,148.87; (c) the amount of interest be changed from zero dollars to $13,982.58; and (d) the amount of costs be changed from zero dollars to $126. In the alternative, she prayed that the matter be consolidated with the Revised Uniform Reciprocal Enforcement of Support Act action. (See *infra*.)

On April 16, 1985, Wife's motion was denied by the court, with the following notation: "Motion to correct clerical error denied. There was no clerical error by the court. The time for reconsideration has long expired." With respect to consolidation, the court ruled: "Motion to consolidate denied without prejudice. The court is unable to determine what cases are the subject of consolidation request."

No further proceedings were taken by Wife from the denial of her March 28 motion. Consequently, the judgment of November 18, 1983, is final.

### Proceedings Under Revised Uniform Reciprocal Enforcement of Support Act (RURESA)

On April 3, 1985, while her motion for reconsideration under SSMJA was pending, Wife filed a statement for registration of foreign support order and clerk's notice under RURESA (case No. 175615). (§ 1650 et seq.) In item

No. 5, she alleged that the "[a]mount of support now due and remaining unpaid [is] $33,484.62, including costs and interest." This statement was predicated only upon the New York judgments of May 22, 1974, and September 10, 1975. In response to Wife's motion, on April 23, 1985, Husband filed a petition to vacate registration of foreign support order, which was not acted upon by the trial court.

On October 1, 1985, Husband filed a notice of motion to grant petition to vacate registration of foreign support order. The matter was continued from time to time. Finally, on February 18, 1986, the motion was denied by minute order without explanation. Husband appeals from this February 18 order. We reverse.

## Discussion

Section 1710.10, subdivision (c) defines a "sister state judgment" as that "part of any judgment, decree, or order of a court of a state of the United States, other than California, which requires the payment of money, but does not include a support order as defined in subdivision (k) of Section 1653." Section 1653, subdivision (k) is part of RURESA and defines a "support order" as "any judgment, decree, or order of support in favor of an obligee whether temporary or final, or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered."

Husband argues that when Wife first sought enforcement of the New York money judgments in 1983, they were not considered to be "support orders" and therefore were enforceable under SSMJA. Husband reasons that Wife's subsequent attempt to register the same judgments under RURESA is nothing more than a collateral attack on the now final SSMJA judgment. Since the doctrine of res judicata bars this type of collateral attack, Husband insists that the February 18, 1986, RURESA order should be reversed and his motion to vacate registration of a foreign support order granted.

Wife responds by arguing that the SSMJA proceedings were directed only to the attorney's fee portion of the New York judgments. Since she purportedly has never sought to enforce the spousal and child support portions of these judgments, she is not precluded from pursuing these claims under RURESA.

We begin by noting that statements made by Wife at various stages of the proceedings contradict her position on appeal. In a memorandum she filed in opposition to Husband's motion for order vacating the SSMJA judgment, her counsel stated: "The judgments herein at issue, all entered before 1976,

are for spousal and child support obligations then due and for attorney's fees awarded. . . ."

Also, the claim for counsel fees was not Wife's to assert. According to documents that she filed under RURESA, which were confirmed by Sweeney in a declaration he filed in the RURESA matter, the attorney's fee awards were due him. This fact was also confirmed by Wife in her March 28, 1985, motion for reconsideration, wherein she sought, inter alia, to name Sweeney as plaintiff. There would be no need to add Sweeney as a plaintiff if the attorney's fee issue had been resolved. Furthermore, in a declaration filed on January 2, 1986, Sweeney claimed that he had not been paid the $2,500 owed him even though, as we have noted earlier, Wife admitted having received a check tendered in full satisfaction of the November 18, 1983, SSMJA judgment. If this tender was for payment of counsel fees, the check should have been delivered to Sweeney.

Moreover, the SSMJA claim itself reveals that it was predicated on all three New York judgments without segregation as to attorney's fees, spousal support, child support or interest. The order, prepared by Wife's attorney and submitted to the court for signature, did not differentiate between the various portions of the New York judgments or specify the components therein adjudicated. Everything was lumped together. Upon this record, we can only conclude that the court considered all of the allegations and rendered judgment accordingly.[2]

At the time Wife commenced her SSMJA proceedings in 1983, the appellate decisions in California clearly provided that both the attorney's fee and support provisions of the New York judgments were enforceable under SSMJA, but not under RURESA. *Fishman* v. *Fishman* (1981) 117 Cal.App.3d 815, 822-823 [173 Cal.Rptr. 59] (Dist. Two, Div. One) held that a New York judgment for attorney's fees and costs in a marriage dissolution action was not a support order and therefore not excluded under SSMJA. In so ruling, the court hinted that an award of attorney's fees and costs could not be sustained under RURESA. In *Liebow* v. *Superior Court* (1981) 120 Cal.App.3d 573, 579-581 [175 Cal.Rptr. 26] (Fourth Dist., Div. Two), the court squarely held that a specified amount of back alimony, reduced to an Ohio money judgment, was not a "support order" under RURESA and consequently was enforceable under SSMJA.

---

[2]The factual record is in a hopeless state of confusion due to the lapse of time, lost records, and conflicting claims of overpayments and credits. We cannot reconcile the figures Wife has advanced in her numerous petitions, particularly when she acknowledges satisfaction of the May 22, 1974, judgment and receipt of a check tendered in full satisfaction of the SSMJA judgment of November 18, 1983.

However, two recent appellate decisions have declined to follow *Fishman* and *Liebow*. On December 2, 1983, *Morris* v. *Cohen* (149 Cal.App.3d 507, 513-517 [196 Cal.Rptr. 834]) (Fourth Dist., Div. One) decreed that a Pennsylvania support order reduced to a money judgment was a support order requiring enforcement under RURESA, not SSMJA. A subsequent case, *Neuman* v. *Barbera* (1985) 164 Cal.App.3d 437, 440-443 [210 Cal.Rptr. 556] (Second Dist., Div. Six) reached the same result. Wife argues that these cases support her claims under RURESA.[3]

Neither *Morris* nor *Neuman* bear on the primary issue here, which is whether a SSMJA judgment can be collaterally attacked under RURESA. We conclude that the SSMJA judgment of November 18, 1983, is a final adjudication of Wife's claims to spousal and child support under the New York judgments, and has res judicata effect.

"Collateral attack is proper to contest lack of personal or subject matter jurisdiction or the granting of relief which the court has *no power* to grant. [Citations.] Nonjurisdictional errors, however, are not appropriate procedural targets within this context. Thus, a failure to state a cause of action [citation], insufficiency of evidence [citation], abuse of discretion [citation], and mistake of law [citations], have been held nonjurisdictional errors for which collateral attack will not lie. [Citation.] The error of which plaintiffs in this case complain does not reach the *power* of the court to act, but concerns instead a mistaken application of law. Thus the judgment may not be collaterally attacked." (*Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 950-951 [126 Cal.Rptr. 805, 544 P.2d 941], italics in original.)

In *In re Marriage of Maxfield* (1983) 142 Cal.App.3d 755 [191 Cal.Rptr. 267], the trial court terminated a contempt hearing and vacated an order of modification on the ground that the order was entered in reliance upon the parties' stipulation and not upon a showing of substantial change of circumstances. The appellate court held that this ruling was erroneous because a modification order can be made upon stipulation of the parties only. Nonetheless, "[t]he claimed error does not render the order void. The court had jurisdiction over the parties and subject matter. In the sense that any error is contrary to law, the court arguably exceeded its 'authority,' as husband claims, by not expressly finding changed circumstances before modifying spousal support. The defect, however, is merely a nonjurisdictional mistake of law and the order remains immune from collateral attack." (*Id.* at p. 759.)

---

[3]Counsel apparently was unaware of the existence of the *Morris* and *Neuman* cases until January 8, 1986. On that date, in the RURESA proceedings, the trial court was first advised of the *Morris* v. *Cohen* rule authorizing enforcement under RURESA of support orders even though reduced to a money judgment.

■ Here, the SSMJA court had jurisdiction over the parties and the subject matter. As we have seen, at the time of the November 18, 1983, judgment, *Fishman* and *Liebow* provided that SSMJA applied to foreign claims for attorney's fees and costs, as well as to support orders reduced to money judgments. Wife's documents, framed both before and after commencement of the RURESA matter, support the conclusion that she intended to litigate all portions of the three New York judgments. The SSMJA court reacted accordingly. Assuming that the SSMJA court made an error of substantive law in light of the *Morris* and *Neuman* cases decided after the November 18, 1983, judgment, such error will not support a collateral attack on a final judgment. (*Armstrong* v. *Armstrong, supra,* 15 Cal.3d at p. 950.)[4]

---

[4]It is apparent from our discussion that these appellate cases have created confusion and uncertainty for trial courts, lawyers and litigants.

"A decision of a court of appeal is not binding in the courts of appeal. One district or division may refuse to follow a prior decision of a different district or division, for the same reasons that influence the federal Courts of Appeals of the various circuits to make independent decisions. . . ." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 772, pp. 740-741; see also *McGlothlen* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 1005, 1017 [140 Cal.Rptr. 168], and *Swinerton Walberg Co.* v. *City of Inglewood-L.A. County Civic Center Authority* (1974) 40 Cal.App.3d 98, 101 [114 Cal.Rptr. 834].)

Yet, in *Cole* v. *Rush* (1955) 45 Cal.2d 345, 351 [289 P.2d 450, 54 A.L.R.2d 1137], overruled on other grounds in *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 167 [95 Cal.Rptr. 623, 486 P.2d 151], our Supreme Court has said of a Court of Appeal decision: "Its judgment stands, therefore, as a decision of a court of last resort in this state, until and unless disapproved by this court or until change of the law by legislative action." Of the same view, see *Maillet* v. *Workmen's Comp. Appeals Bd.* (1972) 23 Cal.App.3d 107, 111 [99 Cal.Rptr. 925], and *Scott* v. *E.L. Yeager Constr. Co.* (1970) 12 Cal.App.3d 1190, 1194 [91 Cal.Rptr. 232].)

But it is obvious that this Supreme Court pronunciamento is honored as much in its breach as in its observance. In *Morris* v. *Cohen,* Division One of the Fourth District, in 1983, opted not to follow *Liebow* v. *Superior Court,* decided in 1981 by Division Two of the same district. *Neuman* v. *Barbera,* decided by Division Six of the Second District in 1985, chose not to follow the *Fishman* v. *Fishman* matter decided in 1981 by Division One of the same district. (See Hogoboom & King, Cal. Practice Guide: Family Law (1987) Enforcement of Orders & Judgments, § 18.188, pp. 18-63 for description of case law conflict and interpretation of *Neuman* as allowing enforcement of support orders under SSMJA only in non-RURESA states.) As a practical matter, a superior court ordinarily will follow an appellate opinion emanating from its own district even though it is not bound to do so. Superior courts in other appellate districts may pick and choose between conflicting lines of authority. This dilemma will endure until the Supreme Court resolves the conflict, or the Legislature clears up the uncertainty by legislation.

We respectfully suggest to the Legislature that the cause of appellate conflict is a genuinely perceived ambiguity in the two statutes, which it can resolve easily by legislative action. The question to be decided is whether out-of-state spousal or child support orders subsequently reduced to money judgments are to be enforced under SSMJA or RURESA. Another issue which should be addressed is whether attorney's fees awards are to be enforced under SSMJA or RURESA. It makes little sense to us that support orders be enforced under one act and attorney's fee awards enforced under another.

Selecting one act over the other would involve very little in the way of conflicting policy considerations. And, based on current practicalities, corrective legislation would likely become

## Disposition

The minute order of February 18, 1986, is reversed. The trial court is directed to grant Husband's motion to vacate the registration of the foreign support order under RURESA. Each party to bear its own costs on appeal.

Feinerman, P. J., and Hastings, J., concurred.

---

part of the substantive law at a much earlier date than if the issue were to be taken over by the Supreme Court on petition for review.

In the meantime, given the realities of attempting to divine how a particular superior court judge will rule on the issue, careful counsel should consider seeking relief under both SSMJA and RURESA. Although the trial court is then forced to select between the currently existing lines of authority, counsel will have protected his client and himself. Whichever way the trial court decides, the appellate court must hold either that the trial court erred, in which case the matter will be reversed, or that the trial court ruled correctly in the first instance.