71 Cal.Rptr.3d 714 (2008)
158 Cal.App.4th 1480
David JESSEN, Plaintiff and Appellant,
v.
MENTOR CORPORATION, Defendant and Respondent.
No. B191278.
Court of Appeal of California, Second District, Division Seven.
January 16, 2008.
As Modified on Denial of Rehearing February 6, 2008.
*716 Gary Rand & Suzanne E. Rand-Lewis and Suzanne E. Rand-Lewis, Van Nuys, for Plaintiff and Appellant.
Kalland & Romag and James J. Romag for Defendant and Respondent.
*715 PERLUSS, P.J.
David Jessen appeals from the judgment entered after the trial court granted summary judgment in favor of Mentor Corporation in this product liability action. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On October 10, 2003 Jessen had a cancerous testicle removed and replaced with a testicular prosthesis, a Class III medical device, designed, manufactured, labeled and sold by Mentor as the Mentor Saline-Filled Testicular Prosthesis. The prosthesis, which had been shipped unfilled, was not filled with saline solution prior to implantation as directed in the enclosed instructions. The prosthesis became deformed, causing Jessen pain, and ultimately had to be replaced.
*717 On October 15, 2004 Jessen filed a form complaint against Mentor alleging causes of action for strict liability, negligence and breach of warranty.[1] The essence of Jessen's claims is that Mentor failed to include a warning on the outer packaging of the prosthesis that it must be filled prior to implantation.[2] On June 2, 2006 the trial court granted Mentor's motion for summary judgment on the ground Jessen's state law claims were preempted by federal law.[3]

CONTENTIONS
Jessen contends there is a triable issue of fact whether the testicular prosthesis is a Class III medical device subject to federal preemption and, even if it is, his claims are not preempted.

DISCUSSION

1. Standard of Review

We review the trial court's grant of summary judgment de novo and decide independently whether the parties have met their respective burdens and whether facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (Intel Corp. v. Hamidi (2003) 30 Cal.4th 1342, 1348, 1 Cal.Rptr.3d 32, 71 P.3d 296; Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 334, 100 Cal.Rptr.2d 352, 8 P.3d 1089; Code Civ. Proc., § 437c, subd. (c).) We also review de novo any underlying issues of statutory construction. (Earner v. Leeds (2000) 24 Cal.4th 676, 683, 102 Cal.Rptr.2d 97, 13 P.3d 704.)
When a defendant moves for summary judgment on the ground there is an affirmative defense to the action, the burden shifts to the plaintiff to show there is one or more triable issues of material fact regarding the defense after the defendant meets the burden of establishing all the elements of the affirmative defense. (Code Civ. Proc., § 437c, subds. (o)(2) & (p)(2); Mirzada v. Department of Transportation (2003) 111 Cal.App.4th 802, 806-807, *718 4 Cal.Rptr.3d 205 [once defendant establishes the existence of an affirmative defense, burden on summary judgment shifts to the plaintiff to produce evidence establishing a triable issue of material fact refuting the defense]; Consumer Cause, Inc. v. SmileCare (2001) 91 Cal.App.4th 454, 468-69, 110 Cal.Rptr.2d 627; Consumer Cause, at p. 486, 110 Cal.Rptr.2d 627 (dis. opn. of Vogel (Miriam A.), J.) ["[W]hen a defendant moves for summary judgment based upon an affirmative defense, the defendant has the initial burden of productionthat is, to make a prima facie showing in support of its affirmative defense.... Once that is done, the burden shifts to the plaintiff to present evidence sufficient to create a triable issue of fact as to the affirmative defense relied on by the defendant"]; see also Huynh v. Ingersoll-Rand (1993) 16 Cal.App.4th 825, 830, 20 Cal.Rptr.2d 296.) If Jessens claims are preempted, Mentor "`has established a complete defense and summary judgment was appropriate.'" (Armstrong v. Optical Radiation Corp. (1996) 50 Cal.App.4th 580, 585, 57 Cal.Rptr.2d 763 (Armstrong).)
On review of an order granting summary judgment, we view the evidence in the light most favorable to the opposing party, liberally construing the opposing party's evidence and strictly scrutinizing the moving party's. (O'Riordan v. Federal Kemper Life Assurance (2005) 36 Cal.4th 281, 284, 30 Cal.Rptr.3d 507, 114 P.3d 753.)

2. Law Governing Federal Preemption of State Law Claims Involving Medical Devices

The Medical Device Amendments of 1976 (21 U.S.C. § 360c et seq.) (MDA) to the Food, Drug and Cosmetic Act (21 U.S.C. § 301 et seq.) enacted "`to provide for the safety and effectiveness of medical devices intended for human use'" (Medtronic, Inc. v. Lohr (1996) 518 U.S. 470, 474, 116 S.Ct. 2240, 135 L.Ed.2d 700 (Medtronic )), classify medical devices into three categories based on the risk they pose to the public. (21 U.S.C. § 360c; Medtronic, at p. 476, 116 S.Ct. 2240; Armstrong, supra, 50 Cal.App.4th at p. 585, 57 Cal. Rptr.2d 763.) Class III medical devices, which pose the greatest risk, are subject to the most stringent controls. (Scott v. CIBA Vision Corp. (1995) 38 Cal.App.4th 307, 315, 44 Cal.Rptr.2d 902 (Scott).) Examples of Class III devices include pacemakers (21 C.F.R. § 870.3610), silicone inflatable breast prostheses (21 C.F.R. § 878.3530) and "solid or gel-filled silicone rubber prostheses] that [are] implanted surgically to resemble a testicle" (21 C.F.R. § 876.3750; see Goldsmith v. Mentor Corp. (D.N.H.1995) 913 F.Supp. 56, 59 [no triable issue of fact whether Mentor large testicular prosthesis, which contained reinforced, molded silicone elastomer, was Class III medical device] ).[4]
"Before a new Class III device may be introduced to the market, the manufacturer must provide the [Food and Drug Administration (FDA) ] with a `reasonable assurance' that the device is both safe and effective. See 21 U.S.C. § 360e(d)(2). Despite its relatively innocuous phrasing, the process of establishing this `reasonable assurance,' which is known as the `premarket approval,' or `PMA' process, is a rigorous one. Manufacturers must submit detailed information regarding the safety and efficacy of their devices, which the *719 FDA then reviews, spending an average of 1,200 hours on each submission." (Medtronic, supra, 518 U.S. at p. 477, 116 S.Ct. 2240.) A product's labeling is also within the purview of the PMA process. (21 U.S.C. § 360e(d)(2)(A), (B), (D); Steele v. Collagen Corp. (1997) 54 Cal.App.4th 1474, 1488, 63 Cal.Rptr.2d 879 (Steele) ["`"FDA retains rigid control over the entirety of the labeling and packaging of class III products"'"; "the product's sponsor must submit a proposed label to the FDA for analysis and review prior to gaining PMA for the product"]; accord, Scott, supra, 38 Cal.App.4th at p. 318, 44 Cal.Rptr.2d 902.)
Once a product has received premarket approval, it may be marketed (Scott, supra, 38 Cal.App.4th at p. 315, 44 Cal.Rptr.2d 902); but the product is subject to the federal, device-specific requirement of adhering to the standards contained in its individual, federally approved PMA. (See Riegel v. Medtronic, Inc. (2nd Cir.2006) 451 F.3d 104, 118, cert, granted June 25, 2007, ___ U.S. ___, 127 S.Ct. 3000, 168 L.Ed.2d 725.) The manufacturer cannot make any changes that may affect the safety or effectiveness of the device without further FDA approval. "Any subsequent changes in the product require submission of a PMA supplement application. (21 C.F.R. § 814.39.)" (Ibid.) "While the design or labeling of a device may be changed to enhance the safety without prior approval from the FDA, the manufacturer must submit to the FDA a PMA supplement and obtain acknowledgment from the FDA of receipt of the supplement. (21 C.F.R. § 814.39 (1996).) The device is still subject to withdrawal from the market if the FDA determines any changes have rendered it unsafe or the labeling inadequate." (Steele, supra, 54 Cal.App.4th at p. 1488, 63 Cal.Rptr.2d 879.)
The MDA includes an express preemption provision,[5] which "prohibits states from imposing `any requirement ... which is different from, or in addition to,' federal requirements relating to the safety or effectiveness of medical devices intended for human use. (21 U.S.C. § 360k)"[6] (Evraets v. Intermedics Intraocular, Inc. (1994) 29 Cal.App.4th 779, 785, 34 Cal. Rptr.2d 852.) The FDA has promulgated an interpretative regulation providing, "State or local requirements are preempted only when the [FDA] has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific [FDA] requirements." (21 C.F.R. § 808.1(d).) A state law requirement may be "established by statute, ordinance, regulation, or court decision" (21 C.F.R. § 808.1(b)); thus, state common law claims may be preempted by the MDA. (Armstrong, *720 supra, 50 Cal.App.4th at p. 587, 57 Cal.Rptr.2d 763.)[7]
A majority of California and federal courts have concluded all state common law claims relating to the safety or effectiveness of a device, other than those based on a violation of FDA requirements, are preempted.[8] (See, e.g., Blanco v. Baxter Healthcare Corp. (2008) 158 Cal. App.4th 1039, ___, 70 Cal.Rptr.3d 566 [although "Medtronic court was fractured] ... five Justices agreed `state common-law damages actions do impose "requirements" and are therefore preempted where such requirements would differ from those imposed' by the MDA"]; Steele, supra, 54 Cal.App.4th at p. 1489, 63 Cal.Rptr.2d 879 ["state requirements in the form of standards of care or behavior are preempted and cannot form the basis of a state common law claim for damages if they are different from or in addition to the specific federal requirements arising from the PMA process"]; Scott, supra, 38 Cal.App.4th at pp. 318-319, 44 Cal.Rptr.2d 902["[r]ecent cases ... illustrate the complete preemptive effect of the PMA process on state law tort claims involving inadequate labeling or failure to warn"]; In re Sulzer Hip Prosthesis and Knee Prosthesis (N.D.Ohio 2006) 455 F.Supp.2d 709, 716 & fn. 8 [cases from seven federal circuits "reveal that § 360k(a) preempts almost every type of state law claim that seeks to hold a defendant liable for a PMA-approved medical device; the only exception is a claim that the medical device failed to conform with the FDA requirements prescribed by the PMA"];[9] cf. Kanter v. Warner-Lambert Co. (2002) 99 Cal.App.4th 780, 794-795, 122 Cal.Rptr.2d 72 ["substantial similarity between the premarket approval and new *721 drug application processes compels the conclusion that the latter also establishes a federal requirement with respect to labeling that can have preemptive effect" on "conflicting state requirements"].) "The design, manufacture, and labeling of the device, as approved by the FDA as safe and effective after the device has undergone the PMA process, are the specific federal requirements giving rise to preemption. [Citations.] They constitute a federal regulatory standard of care." (Steele, at p. 1489, 63 Cal.Rptr.2d 879.) The FDA has also "unequivocally expressed the opinion that state common law claims such as those [for defective design and manufacture and failure to warn of the alleged defect] against a PMA-approved device are preempted." (Horn v. Thoratec Corp. (3d Cir.2004) 376 F.3d 163, 171 & fn. 13.) "Because the FDA is the federal agency to which Congress has delegated its authority to implement the provisions of the [MDA], the agency is uniquely qualified to determine whether a particular form of state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, [citation] and, therefore, whether it should be pre-empted." (Medtronic, supra, 518 U.S. at p. 496, 116 S.Ct. 2240.)
Notwithstanding the weight of authority, Jessen contends this court should follow Armstrong, supra, 50 Cal.App.4th 580, 57 Cal.Rptr.2d 763, in which Division One of this court held there was no preemption of the plaintiffs state law claims for negligence, strict liability and breach of warranty arising out of the use of intraocular fluida Class III medical device that had completed the PMA processin cataract surgery. Relying on the exception to preemption in the FDA regulations for "State or local requirements of general applicability where the purpose of the requirement relates either to other products in addition to devices (e.g., requirements such as general electrical codes, and the Uniform Commercial Code (warranty of fitness)), or to unfair trade practices in which the requirements are not limited to devices" (21 C.F.R. § 808.1(d)(1)) and its understanding of the United States Supreme Courts decision in Medtronic, supra, 518 U.S. 470, 116 S.Ct. 2240, Division One explained, "[T]he state law requirements imposed by the negligence claim (e.g., the duty of a manufacturer to avoid foreseeable dangers in making a product or to inform users of potentially dangerous products of the risks involved) `were not specifically developed "with respect" to medical devices.' [Citation.] Rather, they are `requirements of general applicability where the purpose of the requirement relates ... to other products in addition to [medical] devices.' [Citation.] These state requirements therefore escape pre-emption ... because their generality leaves them outside the category of requirements that § 360k envisioned to be "with respect" to specific devices....'" (Armstrong, at pp. 594-595, 57 Cal.Rptr.2d 763.) The court further concluded Armstrongs theory of strict liability was also based on general principles of state tort law that were not specifically developed with respect to medical devices, and thus was not preempted. (Id. at p. 595, 57 Cal.Rptr.2d 763.)

3. The Trial Court Properly Granted Summary Judgment in Favor of Mentor

a. Jessen's common-law claims are subject to federal preemption

Recognizing that neither the United States nor the California Supreme Court has given a definitive answer to the question raised by this case,[10] we conclude our Third District colleagues in Steele, supra, *722 54 Cal.App.4th 1474, 63 Cal.Rptr.2d 879, like the majority of other courts that have analyzed the issue, correctly concluded state common law tort actions relating to the safety or effectiveness of PMA-approved devices are preempted by the MDA. As the Steele court explained, in his opinion concurring in part and concurring in the judgment Justice Breyerwho cast the critical fifth vote in the five-to-four decision in Medtronic, supra, 518 U.S. 470, 116 S.Ct. 2240departed from the plurality opinion of Justice Stevens to emphasize he was "not convinced that future incidents of MDA preemption of common-law claims will be `few" or `rare.'" (Id. at p. 508, 116 S.Ct. 2240 (cone. opn. of Breyer, J.).) Noting that federal preemption was triggered by state imposition of any "requirement" that differs from "federal requirements relating to the safety or effectiveness of medical devices intended for human use," Justice Breyer wrote that "[o]ne can reasonably read the word `requirement' as including the legal requirements that grow out of the application, in particular circumstances, of a State's tort law." (Id. at p. 504, 116 S.Ct. 2240.) Justice O'Connor in her opinion concurring in part and dissenting in part, which was joined by the Chief Justice and Justices Scalia and Thomas, agreed, "If § 360k's language is given its ordinary meaning, it clearly pre-empts any state common-law action that would impose a requirement different from, or in addition to, that applicable under the FDCAjust as it would pre-empt a state statute or regulation that had that effect." (Id. at p. 511, 116 S.Ct. 2240 (cone. & dis. opn. of O'Connor, J.).) Division One's decision in Armstrong, supra, 50 Cal.App.4th 580, 57 Cal.Rptr.2d 763 essentially "ignores Justice Breyer's statement in Medtronic, that common law standards of care and behavior impose specific requirements, even though the general duty may not." (Steele, at p. 1487, 63 Cal.Rptr.2d 879; accord Blanco v. Baxter Healthcare Corp., supra, ___ Cal.App.4th at ___, 70 Cal. Rptr.3d 566.) Consequently, Jessen's state law claims are preempted unless he can demonstrate a triable issue of fact Medtronic failed to adhere to federal regulatory standards.[11]

*723 b. The testicular prosthesis is a Class III medical device

As a threshold matter Jessen contends Mentor failed to establish the testicular prosthesis is a Class III medical device because it erroneously cited 21 Code of Federal Regulations part 878.3530(a), applicable to silicone inflatable breast prostheses, in its moving papersa mistake also made in a supporting declaration by Clarke Scherff, a Mentor vice president responsible for the management of new product development through the manufacturing process, including compliance with FDA regulations.[12] Mentor and Scherff's failure to properly cite 21 Code of Federal Regulations part 876.3750, which states "solid or gel-filled silicone rubber prostheses] that [are] implanted surgically to resemble a testicle" are Class III medical devices, does not create a triable issue of fact whether the Mentor Saline-Filled Testicular Prosthesis at issue in this case is in fact a Class III device.[13] Scherff set forth sufficient facts in his declaration, independent of the erroneous legal citation, describing the PMA process and establishing the testicular prosthesis is a Class III medical device: It could not be sold to the general public without premarket approval; on January 22, 2002 Mentor submitted a PMA application; and on July 19, 2002, after extensive review by the FDA, the prosthesis received approval and could thus be sold, but only in accordance with the design, manufacture and labeling specifications approved by the FDA. A declaration was submitted by Jeanne Wyatt, a former full-time employee retained by Mentor as a consultant to provide assistance in, among other things, the PMA process, stating essentially the same thing. (Cf. Goldsmith v. Mentor Corp., supra, 913 F.Supp. at p. 59 [brief affidavits from regulatory affairs manager describing testicular prosthesis and stating it was Class III medical device sufficient].)
In the trial court Jessen also attempted to dispute the testicular prosthesis qualifies as a Class III medical device by noting Mentor had filed a supplement to its PMA, approved on July 28, 2004, to add a warning to the outer packaging that it should be filled with saline prior to implantation. Use of the supplement process, in fact, confirms the testicular prosthesis is a Class III medical device. Mentor would not have needed a premarket approval supplement unless it had previously received FDA authorization through the PMA process applicable to Class III medical devices. Indeed, Jessen himself conceded it is such a device, stating in his opposition brief to Mentor's motion for summary judgment, "Class III devices, of which Mentor's testicular implant is one, are devices that `present a potential unreasonable risk of illness or injury.'" (Underlining in the original.)

c. There is no triable issue of fact whether the prosthesis complied with FDA labeling requirements imposed through the PMA process

To establish preemption, Mentor was required "to prove, by way of its statement of undisputed facts, that [the testicular implant] was designed, manufactured, and labeled according to the specifications approved by the FDA." (Steele, supra, 54 Cal.App.4th at p. 1490, 63 Cal. Rptr.2d 879.) Mentor met its burden by submitting the declarations of Scherff and *724 Wyatt, which included the necessary information regarding compliance with all FDA specifications.[14] Jessen, however, contends he presented evidence Mentor did not actually comply with the FDA requirements regarding labeling, thereby creating a triable issue of fact. Objections to the evidence Jessen cites were sustained by the trial court, and those rulings have not been challenged on appeal.[15] (See Lopez v. Baca (2002) 98 Cal.App.4th 1008, 1014-1015, 120 Cal.Rptr.2d 281 [in absence of proper challenge to trial court's evidentiary rulings, appellate court will consider all affected evidence to have been excluded].) Jessen's evidence in any event fails to raise a triable issue of material fact. The fundamental premise of Jessen's argument is Mentor failed to comply with a labeling requirement imposed on July 28, 2004, more than eight months after he had his surgery. Mentor, however, was not required to satisfy a PMA requirement not yet in effect. (See Scott, supra, 38 Cal. App.4th at p. 321, 44 Cal.Rptr.2d 902 ["The fact that [the plaintiff] purchased the product in its unmodified form is not relevant to the question of preemption! The record adequately demonstrates that the [product] was subject to class III MDA regulation at the time of the injury and that the FDA had in fact approved the product for marketing, both in its original and in its new improved packaging"].) Because Jessen has failed to offer any evidence Mentor failed to comply with the labeling requirement in effect when he had his surgery, his claims are preempted; and summary judgment was properly granted in Mentor's favor.

DISPOSITION
The judgment is affirmed. Mentor Corporation is to recover its costs on appeal.
We concur: WOODS and ZELON, JJ.
NOTES
[1] Jessen and his wife, who was a plaintiff in the action as well, also alleged claims for negligence and loss of consortium against unnamed Doe defendants. Those claims are not at issue in this appeal, and we use "Jessen" in the singular to refer solely to David Jessen.
[2] According to Jessen, there is no significant difference in appearance or weight between an unfilled and filled implant, especially in the small size Jessen received.
[3] Mentor pleaded as an affirmative defense, "Recovery herein is barred, in whole or in part, based upon the doctrine of federal preemption and/or pre-emption by the Medical Device Amendments to the Food, Drug and Cosmetic Act." Mentor was not, as Jessen contends (admittedly without authority), required to plead a specific code section to raise preemption as a defense to Jessen's claims. (See Hata v. Los Angeles County Harbor/UCLA Medical Center (1995) 31 Cal. App.4th 1791, 1805-1806, 37 Cal.Rptr.2d 630 [separately stated affirmative defense only need comply with general notice pleading requirement of Code Civ. Proc, § 459; requirement that statutory section relied upon be cited in pleading statute of limitations defense does not apply to other affirmative defenses]; Code Civ. Proc, § 452 [allegations of pleading must be liberally construed]; see also Ramos v. City of Santa Clara (1973) 35 Cal. App.3d 93, 95-96, 110 Cal.Rptr. 485 [failure to raise defense in answer does not of necessity preclude assertion of defense in motion for summary judgment].) Moreover, it is simply not credible Jessen, whose counsel has represented herself as "hav[ing] in depth experience handling all types of medical device cases from prosthetics to implants and the potential preemption issues that relate thereto," did not receive sufficient notice as to Mentor's preemption defense because it failed to provide a code citation. (See Hata, at p. 1806, 37 Cal.Rptr.2d 630 ["the fact is [plaintiff] had notice of this particular [affirmative] defense, had the opportunity to read the code section, and had knowledge of the applicability of the provision. That was sufficient"].)
[4] Class I devices, which pose little or no public health threat, include tongue depressors (21 U.S.C. § 360c(a)(1)(A); 21 C.F.R. § 860.3(c)(1)); an example of a Class II device, which involves a higher degree of risk, is an oxygen mask. Unlike Class III devices, Class II devices can be marketed without advance approval from the Food and Drug Administration, but nonetheless must comply with performance regulations known as "special controls." (21 U.S.C. § 360c(a)(1)(B); 21 C.F.R. § 860.3(c)(2).)
[5] The United States Supreme Court has traditionally recognized three varieties of state law preemption by federal enactments pursuant to the supremacy clause (U.S. Const., art. VI, cl.2):(1) express preemption, (2) implied preemption and (3) conflict preemption. (English v. General Electric Co. (1990) 496 U.S. 72, 78-79, 110 S.Ct. 2270, 110 L.Ed.2d 65.) Express preemption exists when, as here, Congress defines the extent to which its enactments will displace state law. (Id. at p. 78, 110 S.Ct. 2270.) Federal laws may preempt state common law as well as state legislation. (Cipollone v. Liggett Group, Inc. (1992) 505 U.S. 504, 521, 112 S.Ct. 2608, 120 L.Ed.2d 407.)
[6] Title 21 United States Code section 360k(a) states, "[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement[¶] (1) which is different from, or in addition to, any requirement applicable under this Act [21 U.S.C. §§ 301 et seq.] to the device, and [¶] (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act."
[7] In Medtronic, supra, 518 U.S. 470, 116 S.Ct. 2240, a majority of the United States Supreme Court agreed a state "requirement" within the meaning of the MDA's preemption provision could encompass state common law actions, as well as causes of action based on state statutes. (See Medtronic, at pp. 502-503, 116 S.Ct. 2240 (plur. opn. of Stevens, J.); id. at pp. 503-505, 116 S.Ct. 2240 (cone. opn. of Breyer, J.); id. at pp. 509-512, 116 S.Ct. 2240 (cone. & dis. opn. of O'Connor, J.).) Nonetheless, the Supreme Court held in a five-to-four decision that none of the plaintiff's common law tort claims was preempted because the device at issue had not gone through the FDA's rigorous premarket approval process, but had been marketed under the alternative "substantially equivalent" procedure, which did not establish a federal "requirement" specifically applicable to the particular device in question within the meaning of the MDA. (See id. at pp. 498-500, 116 S.Ct. 2240.)
[8] Preemption does not apply to a state tort claim based on a violation of FDA requirements because the state claim would not be seeking to impose a device-specific requirement not already imposed by the FDA. (21 C.F.R. § 808.1(d)(2) ["State or local requirements that are equal to, or substantially identical to, requirements imposed by or under the act" are not preempted]; Medtronic, supra, 518 U.S. at p. 495, 116 S.Ct. 2240 ["[n]othing in § 360k denies [a state] the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements"]; Steele, supra, 54 Cal.App.4th at p. 1486, 63 Cal.Rptr.2d 879 ["it is clear preemption does not apply to a state claim based on a manufacturers violation of FDA requirements"].)
[9] The cases summarized in In re Sulzer Hip Prosthesis and Knee Prosthesis, supra, 455 F.Supp.2d at pages 717 to 720 are Riegel v. Medtronic, Inc., supra, 451 F.3d 104; Horn v. Thoratec Corp. (3rd Cir.2004) 376 F.3d 163; Gomez v. St. Jude Medical Daig Div. Inc. (5th Cir.2006) 442 F.3d 919; Martin v. Medtronic, Inc. (5th Cir.2001) 254 F.3d 573; Kemp v. Medtronic, Inc. (6th Cir.2000) 231 F.3d 216; Cupek v. Medtronic, Inc. (6th Cir.2005) 405 F.3d 421; McMullen v. Medtronic, Inc. (7th Cir.2005) 421 F.3d 482; Mitchell v. Collagen Corp. (7th Cir.1997) 126 F.3d 902; Brooks v. Howmedica, Inc. (8th Cir.2001) 273 F.3d 785; and Papike v. Tambrands Inc. (9th Cir.1997) 107 F.3d 737.
[10] Contrary to Jessen's contention, we are not bound by the contrary decision by Division One of this court in Armstrong, supra, 50 Cal.App.4th 580, 57 Cal.Rptr.2d 763. (See In re Marriage of Shaban (2001) 88 Cal.App.4th 398, 409, 105 Cal.Rptr.2d 863 ["there is no `horizontal stare decisis' within the Court of Appeal"]; McCallum v. McCallum (1987) 190 Cal.App.3d 308, 315, fn. 4, 235 Cal.Rptr. 396 ["`decision of a court of appeal is not binding. One district or division may refuse to follow a prior decision of a different district or division, for the same reasons that influence the federal Courts of Appeals of the various circuits to make independent decisions'"].)
[11] Jessen incorrectly asserts Mentor's motion for summary judgment and separate statement of undisputed facts failed to address the breach of warranty claim: The moving papers clearly requested summary judgment "as to all causes of action based upon federal preemption." Also without merit is Jessen's argument that, even if federal preemption applies to his negligence and strict liability claims, it does not bar his breach of warranty claim because the exception to preemption in 21 C.F.R. § 808.1(d)(1) provides "the Uniform Commercial Code (warranty of fitness)" as an example of "[s]tate or local requirements of general applicability where the purpose of the requirement relates ... to other products in addition to devices." Whatever the reach of this exception to the general rule of preemption, implied warranty claims premised on inadequate warnings are preempted by the MDA. (See Scott, supra, 38 Cal.App.4th at pp. 323-324, 44 Cal.Rptr.2d 902 ["If a fact finder applying state breach of warranty law could find that a label that complied with FDA requirements was deficient, such a finding would establish a standard for an adequate warning which would be `in addition to' the requirements applicable under the Act. [Citation.] That result is prohibited under section 360k"]; see also Riegel v. Medtronic, Inc., supra, 451 F.3d at pp. 106, 123 [claims for breach of implied warranty are preempted by 21 U.S.C. § 360k(a)]; Chambers v. Osteonics Corp. (7th Cir.1997) 109 F.3d 1243, 1247-1248 [same].)
[12] In a second declaration filed in reply to Jessen's opposition, Scherff explained the erroneous citation was a scrivener's error.
[13] Jessen does not contend the fact the Mentor testicular prosthesis was to be filled with saline placed it outside the category of Class III medical devices.
[14] Jessen contends Scherff's and Wyatt's declarations were not credible and otherwise objectionable, and thus the trial court impermissibly relied on them. The trial court, however, overruled Jessen's evidentiary objections, and Jessen on appeal has failed to properly "identify the court's evidentiary rulings as a distinct assignment of error" and to carry his burden on appeal to demonstrate the trial court's error. (Roe v. McDonald's Corp. (2005) 129 Cal.App.4th 1107, 1114, 29 Cal.Rptr.3d 127; see Lopez v. Baca (2002) 98 Cal.App.4th 1008, 1014-1015, 120 Cal. Rptr.2d 281 [failure to challenge trial court's evidentiary rulings on appeal forfeits any claim of error].)
[15] The declaration of Jessen's medical expert, Dr. Leslie Rand-Luby, was struck in its entirety as were significant portions of the declaration of Jessen's attorney, Suzanne E. Rand-Lewis, which the court characterized as "an end run around the 20-page limit [for opposition briefs]."