Filed 4/24/15  In re Mariah T. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Mariah T. et al., Persons Coming Under the Juvenile Court Law. | B259252 (Los Angeles County Super. Ct. No. CK99102) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> V.T., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Steven Klaif, Referee.  Affirmed.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Tyson B. Nelson, Deputy County Counsel for Plaintiff and Respondent.

Appellant V.T. (father), the father of the minor children Mariah T. and Julian T., challenges the juvenile court's assumption of jurisdiction over his children, as well as its decision to remove them from his custody, based on its finding that his substance abuse placed the children at substantial risk of serious bodily harm or illness. Finding no error, we affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

Mariah (born July 2011) and Julian (born August 2013) lived with father and Mariana S. (mother).[1] The children came to the attention of the Department of Children and Family Services (DCFS) due to allegations of general neglect. Both parents denied current drug use, but father admitted prior marijuana use. Both parents agreed to submit to random drug testing. Drug tests for the parents were scheduled for April 10, 2014. Mother tested negative for all substances; father did not test.

During a follow-up interview by the social worker, father stated that he had been using marijuana since 2011 to help him sleep and for back problems; he had a medical marijuana license but did not know where it was; he used no drugs other than marijuana; and he missed the drug test because he had to work. The social worker stated that father did not appear to be under the influence. Mother denied that she had ever witnessed father using drugs. The maternal grandmother stated that the parents resided with her and her husband; she had never observed the parents use drugs, and had no concerns about the care the parents provided the children.

After missing a second scheduled drug test, father tested positive for amphetamine, methamphetamine and cannabinoids on May 27, 2014. In a subsequent meeting with the social worker, father explained that he knew the drug test would be positive because he had used methamphetamine on May 22, 2014, and had used the drug for the prior six months, but only twice a month on the weekends. Mother and maternal grandmother denied any knowledge of father's methamphetamine use.

_____

[1] Mother, who is non-offending under the petition, did not appeal the juvenile court's orders and thus is not a party to these proceedings.

2

DCFS conducted a Team Decision Meeting on June 10, 2014, with the parents and other family members. "During the meeting, [father] was evasive and defensive about his drug use . . . and was in denial about his drug usage." He stated that he had been using methamphetamine and marijuana for the past six months, used methamphetamine twice a week, but does not have a drug problem. The paternal grandmother stated that "she was aware that [father] was using drugs," which was why she would not permit him in her home.

On June 13, 2014, DCFS filed a Welfare and Institutions Code[2] section 300 petition. The juvenile court released the children to mother and detained the children from father. The court ordered monitored visitation for father.

In a subsequent interview, father stated that he did not have a substance abuse problem: "I understand what [an illegal] substance can do to people. But I can control that." He believed there was no "differentiation" between marijuana and methamphetamine. "I get how some people are on drugs and they lose control. But I'm totally different. It's not the case with me and I know I'm an unusual case for you guys. I'm not high all the time. I haven't been using that long. I started using meth six months before the ER worker talked to me." Father stated that he started using methamphetamine when he had to care for his diabetic brother by providing him with insulin and all his basic needs; he did not have enough food to feed his brother or himself. He explained, "I didn't have money to feed myself. I don't get hungry with the drug. I'm not doing it to steal or get high. I'm trying to support my family. I'm trying to provide for my family. I'm a unique case. I get it." When asked about the expense of purchasing the drug, father responded, "You're not listening to me. It was practically given to me. I know a lot of people that use drugs." He stated that he never used drugs in the home.

Father enrolled in SOBER International Community Counseling Center on June 12, 2014, and was participating in parenting classes, substance abuse counseling and

_____

[2]     Unless otherwise specified, further statutory references are to this code.

random drug testing. In its Jurisdiction/Disposition Report dated July 27, 2014, DCFS stated, "Despite father's motivation to maintain his sobriety, the Department is concerned that father is still at a vulnerable stage of his sobriety given [his] lack of insight as he is adamant he could control his substance use." DCFS recommended the children remain in the custody of mother and detained from father while father completed his substance abuse treatment.

At the disposition hearing on July 27, 2014, the juvenile court sustained the petition as filed, which read as follows: "b-1 The Children, Mariah T[.] and Julian T[.'s] father, V[.] T[.], has a 3 year history of illicit drug use and is a current user of methamphetamine, amphetamine and marijuana, which renders the father incapable of providing regular care for the children. On 05/27/14, and on prior occasions, the father was under the influence of illicit drugs while the children were in father's care and supervision. The father had a positive toxicology screen for methamphetamine, amphetamine and marijuana on 05/27/2014. Such illicit drug use by the father endangers the children's physical health and safety and places the children at risk of physical harm, damage and danger."

Father was ordered to participate in a substance abuse program to include bi-monthly testing, a 12-step program, and individual counseling to address drug awareness and drug exposure to children. The court ordered monitored visits for father.

Father timely filed a notice of appeal challenging the jurisdictional findings and dispositional orders of the juvenile court.

DISCUSSION

1. *The jurisdictional findings*

Father argues that there was no substantial evidence presented to the juvenile court to support a finding of jurisdiction over the children under count b-1 of the petition based on his alleged substance abuse. Specifically, he maintains that DCFS failed to establish that he was a substance abuser because "the Department also did not present evidence that Father had been diagnosed as having a current substance abuse problem by a medical

4

professional or that he had a current substance abuse problem as demonstrated by various behaviors within the past 12 months as defined in the DSM-IV-TR."

The underlying purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.) Section 300, subdivision (b), permits a minor child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." "Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396, 32 Cal.Rptr.3d 526; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 (*Rocco M.*)), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child presently needs the court's protection. (*Ibid.*) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue.' (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.)" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216 (*Christopher R.*).)

Furthermore, the Legislature has declared that "[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child. Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment." (§ 300.2.) Moreover, "Exercise of dependency court jurisdiction under section 300, subdivision (b), is proper when a child is 'of such tender years that the absence of adequate supervision and care poses an inherent risk to [his or

5

her] health and safety.' (*Rocco M., supra,* 1 Cal.App.4th at p. 824.)" (*Christopher R.* (2014) 225 Cal.App.4th at p. 1216.)

Juvenile court decisions regarding jurisdiction are reviewed under the "sufficiency of the evidence" standard. (*In re In re J. K.* (2009) 174 Cal.App.4th 1426, 1433.) The record is reviewed to determine if there was any substantial evidence presented, whether or not contradicted, which supports the juvenile court's decision. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1649.) All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the judgment, if possible. (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547.) The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record. (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 652.) On appeal, the appellant has the burden to establish the lack of sufficient evidence. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Here, prior to his first drug test, father told DCFS that he never used any drug other than marijuana, and that he began using marijuana in 2011 to help him sleep. Although he stated that he had a medical marijuana card for back pain, he never produced it; in fact, he had been arrested for marijuana possession, suggesting that he did not have a valid marijuana card. After testing positive for marijuana, amphetamine and methamphetamine, father admitted to using the latter substance on a regular basis for the prior six months, stating that he was stressed about caring for his diabetic brother. Father initially stated that he used methamphetamine twice a month, but later said he used it twice a week. Given father's initial false denial of drug use and inconsistent statements about his drug habit, the juvenile court reasonably believe that father understated the extent and duration of his drug use. In addition, following the Department's intervention, father missed two drug tests, which were properly considered the equivalent of a positive test result. While father recognized that consumption of methamphetamine generally had a deleterious effect on its users, he suggested that he was immune to any negative effects of the drug. This evidence fully supports the juvenile court's finding that father's substance abuse endangered the health and safety of the children.

6

Father argues that the holding of *In re Drake M., supra,* 211 Cal.App.4th 754 compels a different conclusion.  We disagree, as did our colleagues in Division Seven of this Court in *Christopher R., supra,* 225 Cal.App.4th 1210.  The *Christopher R.* court explained in detail the issue addressed in *Drake M.*, and its disagreement with that court's conclusion, as follows:  "As the *Drake M.* court explained, when the Legislature rewrote section 300, subdivision (b), in 1987 to include as a basis for dependency jurisdiction a parent's inability to provide regular care for his or her child due to substance abuse, it included no definition of the term 'substance abuse' in the statute.  (*Id.* at p. 765.) Similarly, the legislative history revealed no specific discussion of how the term should be defined in practice.  As a result, '[d]ependency cases have varied widely in the kinds of parental actions labeled "substance abuse."' (*Ibid.*)

"To avoid inconsistencies, the *Drake M.* court proposed a definition of substance abuse based on the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000) (DSM–IV–TR), a definition that had also been used in an earlier dependency decision involving a somewhat different issue, *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322.  (See *Drake M., supra,* 211 Cal.App.4th at p. 765.)  Following *Jennifer A.*, the *Drake M.* court held "a finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the DSM–IV–TR. The full definition of "substance abuse" found in the DSM–IV–TR describes the condition as "[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one (or more) of the following, occurring within a 12–month period:  [¶] (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[; ¶] (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating

7

a machine when impaired by substance use)[; ¶] (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[; and ¶] (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance (e.g., arguments with spouse about consequences of intoxication, physical fights)." (DSM–IV–TR, at p. 199.)' (*Drake M.*, at p. 766.)

"We recognize the *Drake M.* formulation as a generally useful and workable definition of substance abuse for purposes of section 300, subdivision (b). But it is not a comprehensive, exclusive definition mandated by either the Legislature or the Supreme Court, and we are unwilling to accept [the appellant's] argument that only someone who has been diagnosed by a medical professional or who falls within one of the specific DSM–IV–TR categories can be found to be a current substance abuser. (See *Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1490, fn. 10 [there is no 'horizontal stare decisis' in the Court of Appeal; 'we are not bound by the contrary decision by Division One of this court']; *In re Marriage of Shaban* (2001) 88 Cal.App.4th 398, 409, 105 Cal.Rptr.2d 863 [same].)" (*Christopher R., supra,* 225 Cal.App.4th at pp. 1217-1218.)

As did the court in *Christopher R., supra,* 225 Cal.App.4th 1210, we conclude that, whether father's conduct fell within one of the DSM–IV–TR categories, the evidence before the juvenile court fully supports an implied finding of drug abuse within the meaning of section 300, subdivision (b). That evidence includes father's current regular use of methamphetamine and marijuana, his admitted use of the drugs in the past, his failure to drug test, and his denial that he has a drug problem. Methamphetamine is a highly addictive and destructive drug. Until father completes treatment and is substance free, he poses a risk of harm to his children.

In addition, because the children were eleven months old and three years old at the time of the jurisdiction hearing—children of "tender years" in the language of *Rocco M.*—"the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm." (*Drake M., supra,* 211 Cal.App.4th at p. 767; accord, *Rocco M., supra,* 1 Cal.App.4th at p. 824.)

8

This fact distinguishes this case from *In re Destiny* (2012) 210 Cal.App.4th 999 [11-year-old minor] and *In re Rebecca C.* (2014) 228 Cal.App.4th 720 [13-year-old minor].) Father did not rebut this evidence. Thus, the jurisdictional findings were supported by substantial evidence.

### 2. *The juvenile court's dispositional orders*

Father also contends that the dispositional order must be reversed because the juvenile court lacked sufficient evidence that there would be a substantial danger to the children if they were returned to his care. He states: "There was no evidence Father ever acted inappropriately or out of the ordinary around the children, in fact the opposite was true. Furthermore, Mother was the primary caretaker of the children and was very protective of them."

On appeal, a removal order will be upheld if it is supported by substantial evidence. (*In re Javier G.* (2006) 137 Cal.App.4th 453, 463.) The juvenile court is empowered to remove a dependent child from the physical custody of the parent with whom the child resided when the section 300 petition was filed, if the court finds by clear and convincing evidence that "There is or would be substantial danger to the physical health, safety, protection, or physical and emotional well being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. . . ."

In deciding whether to remove a child from parental custody, the juvenile court is required to determine if reasonable efforts were made to prevent or eliminate the need for removal. (§ 361, subd. (d); *In re Basilio T.* (1992) 4 Cal.App.4th 155, 171.) Once jurisdiction is established, the juvenile court is not limited to the contents of the sustained petition when making dispositional orders, and may consider evidence beyond the sustained petition to fashion an order consistent with the best interests of the child. (*In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1183.)

9

Due to the age of the minor children, "the finding of substance abuse by father is prima facie evidence of the inability of a parent or guardian to provide regular care resulting a substantial risk of harm." (*Drake M., supra,* 211 Cal.App.4th at p. 767; accord, *Rocco M., supra,* 1 Cal.App.4th at p. 824.) Father has failed to establish that the disposition order was an abuse of the juvenile court's discretion.

DISPOSITION

The juvenile court's jurisdictional findings and dispositional orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

GOODMAN, J.[*]

We concur:

MOSK, Acting P.J.

KRIEGLER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.