Filed 6/24/22; Certified for Publication 7/5/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ELISA MAGALLANES DE VALLE, | F082099 |
| Plaintiff and Appellant, | (Super. Ct. No. 2026884) |
| v. | |
| DOCTORS MEDICAL CENTER OF MODESTO, | **OPINION** |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Stanislaus County.  John D. Freeland, Judge.

Bertling Law Group and Peter G. Bertling, for Plaintiff and Appellant.

Schuering Zimmerman & Doyle, Daniela P. Stoutenburg and Thomas M. Gray, for Defendant and Respondent.

-ooOoo-

Appellant Elisa Magallanes de Valle brought this medical malpractice action against, inter alia, Dr. Rebecca Brock (her personal, treating physician), Golden Valley Health Centers, and Doctors Medical Center of Modesto, after suffering complications and injuries as a result of a hysterectomy procedure performed by her physician at Doctors Medical Center of Modesto.  The complaint alleged a single cause of action, medical negligence, as to all defendants.  Potential liability on the part of Doctors Medical Center of Modesto was premised primarily on an ostensible or apparent agency theory.  The trial court granted summary judgment in favor of Doctors Medical Center of Modesto.  This appeal followed. We affirm.

## FACTS

On June 17, 2015, Elisa Magallanes de Valle (Magallanes) was treated for an ovarian cyst by Dr. Rebecca Brock at Golden Valley Health Centers--Modesto Women's Health (GVHC).  Magallanes selected Dr. Brock as her physician and became her patient.

On May 16, 2016, Magallanes presented to GVHC for treatment by Dr. Brock. Magallanes was experiencing abnormal bleeding and cramping.  She was diagnosed with enlarged uterus and anemia.

On May 23, 2016, Magallanes presented to GVHC and was treated by Dr. Brock. Magallanes complained of worsening pelvic pain.  She was premenopausal and experiencing symptoms such as decreased appetite, dizziness, dysuria (pain when urinating), hematuria (blood in urine), and urinary frequency; she also reported she was experiencing pain when she was working.

On May 31, 2016, Magallanes presented to GVHC for treatment by Dr. Brock. Magallanes reported continuing pelvic pain, bloating, dizziness, menstrual cramping, and nausea.  Magallanes had recently gone to the emergency room for pelvic pain and reported she could not function with the pain and wanted a hysterectomy.  She was assessed for menorrhagia with regular cycle, dysmenorrhea, and chronic pelvic pain.  Dr. Brock noted

2.

that Magallanes expressed an interest in getting a hysterectomy and, therefore, a hysterectomy was ordered, and the scheduling process initiated.

On June 9, 2016, Dr. Brock and/or GVHC scheduled a "TVH/BSO" (total vaginal hysterectomy/bilateral salpingo-oophorectomy) for June 27, 2016, at Doctors Medical Center of Modesto (DMC).

On June 21, 2016, Magallanes presented to GVHC to have a preoperative evaluation with Dr. Brock. Dr. Brock's plan was to conduct a TVH, possibly with a BSO. Dr. Brock documented in admission notes that Magallanes had been made aware of the risks of the procedure, including "injury to bladder due to prior cesarean section, infection, hemorrhage, injury to bowel and other structures, and risk of anesthesia." Dr. Brock also documented that the "[p]atient [had been] given second opinion options, but desires to continue with surgery."

On June 27, 2016, Magallanes initialed and signed DMC's Conditions of Service form. The form, in paragraph 4, expressly states: "Physicians are not employees or agents of the hospital"; Magallanes initialed paragraph 4. (Unnecessary capitalization omitted.) In addition, by signing the form (at the end thereof), Magallanes certified she had "read and understood and accepted the terms of this document." However, in a declaration submitted by Magallanes in support of her opposition to DMC's motion for summary judgment, Magallanes stated: "My initials appear at paragraph 4 of the Conditions of Service form I signed on June 27, 2016. I did not understand what paragraph 4 said because it is written in English and not Spanish. Because paragraph 4 is written in English I was incapable of understanding what it said. No one read paragraph 4 to me in Spanish. No one provided me with a copy of paragraph 4 which was written in Spanish before I initialed this paragraph." (Unnecessary capitalization omitted.) Magallanes further stated in her declaration: "No Spanish interpreter ever told me Dr. Brock was not an agent or employee of DMC. I was never given a document that was written in Spanish which stated that Dr. Brock was not an employee or agent of DMC. I was never given a document in Spanish

3.

which notified me in writing that physicians are not employees or agents of the hospital." (Unnecessary capitalization omitted.)

Along with the Conditions of Service form, Magallanes also signed a form indicating her informed consent to a hysterectomy procedure, as well as a Consent to Surgery form permitting Dr. Brock to perform the procedure. Dr. Brock performed the TVH on Magallanes at DMC, as scheduled, on June 27, 2016.

On June 28, 2016, Dr. Brock assessed Magallanes. Magallanes reported being dizzy and tired and she requested an extra night in the hospital. Dr. Brock evaluated Magallanes for discharge early in the morning on June 29, 2016. Dr. Brock determined Magallanes was stable and ready for discharge; accordingly, discharge was ordered. Upon completion of discharge formalities, Magallanes was discharged.

The same day that Magallanes was discharged and only a short time after discharge, Magallanes arrived at approximately 10:30 a.m., at DMC's Emergency Department; after examination and tests, an injury to the colon was suspected. On June 29, 2016, Dr. Gina Quaid conducted an exploratory laparotomy, colectomy, and colostomy. Dr. Quaid documented in the operative report: "The proximal rectum, there is actual[ly] a serosal defect down to the mucosa and there [were] also some sutures, the rectum was sutured to the cuff as well." Magallanes was fitted with a colostomy bag in light of the rectal injury that had occurred during the TVH procedure performed by Dr. Brock. Magallanes was ultimately discharged on July 8, 2016.

Dr. Brock was an employee of GVHC (she was not an employee of DMC). After Magallanes filed the instant action, she was asked, at deposition: "Do you recall any discussion[, when being assisted in filling out pre-operative paperwork at the hospital,] about the status of doctors being either employees or independent contractors …?" Magallanes responded: "No, because that's something that as a patient you don't – if you get sent there, you just assume that person works there. You don't know specifics."

4.

## PROCEEDINGS

On September 27, 2017, Magallanes filed a complaint against Dr. Brock, DMC, and GVHC, alleging one cause of action for medical negligence. The complaint alleged that Magallanes underwent, on June 27, 2016, a total vaginal hysterectomy procedure, which was negligently performed, causing injuries, and necessitating Magallanes to be readmitted to hospital for follow-up care. The complaint alleged that "[e]ach defendant … was the agent, servant and/or employee of each of the remaining defendants." The complaint further alleged: "Defendants, and each of them, so negligently examined and treated plaintiff … and operated their premises and equipment, and said corporate or other business entity defendants so negligently selected and reviewed its medical staff, all in a manner which was below the standard of care accepted in the community, as to proximately cause the injuries and damages to the plaintiff." The case was removed to federal court and, upon remand to state court, DMC was the only remaining defendant in the state action.[1]

Magallanes's deposition took place on February 26, 2020. Thereafter, DMC filed a motion for summary judgment/summary adjudication as to (1) DMC's direct liability, and (2) DMC's liability under an ostensible agency theory (i.e., the theory that Dr. Brock was an ostensible agent of DMC). DMC's motion papers stated: "Dr. Brock was an employee [of] Golden Valley Health Centers ('GVHC'), a public health agency, and not an employee of DMC. [Citation.] Plaintiff established and selected Dr. Brock as her physician." DMC's motion papers further stated: "Plaintiff alleges one cause of action for medical negligence that is primarily focused on allegations of liability under ostensible agency related to a total vaginal hysterectomy performed by Dr. Brock on June 27, 2016. Plaintiff alleges she suffered injuries due to the negligent procedure performed by Dr. Brock. Plaintiff's theories of liability as to DMC are without merit. DMC has supportive expert opinions related to

---

[1] The record reflects that Dr. Brock was an employee of a clinic that was owned or operated by the federal government, whereby the case was removed to federal court. The record further reflects that Magallanes reached a settlement with Dr. Brock.

5.

standard of care and causation for its employees. There was no negligent act or omission by an employee of DMC, and the damages Plaintiff alleges are the direct result of Plaintiff's chosen and personal surgeon. Further as a matter of law, Ostensible Agency is inapplicable to this case, as Dr. Brock was Plaintiff's personal physician for the scheduled (non-emergen[cy]) surgery at issue." (Unnecessary capitalization omitted, fn. omitted.)

Magallanes filed an opposition to DMC's motion, disputing the contention that summary judgment/summary adjudication was warranted as to her claim against DMC based on an ostensible agency theory. More specifically, Magallanes's opposition first clarified: "Plaintiff does not dispute defendant Doctors Medical Center of Modesto is entitled to summary adjudication on the issue that their nurses and technicians met the standard of care." (Unnecessary capitalization omitted.) Magallanes's opposition next contended: "A triable issue of fact exists regarding the issue of whether plaintiff was provided actual notice that Dr. Brock was an independent contractor and not an agent or employee of defendant Doctors Medical Center of Modesto." (Unnecessary capitalization omitted.) The opposition further stated: "Plaintiff reasonably believed Dr. Brock was an employee of Defendant DMC" because "[s]he was never informed by anyone that Dr. Brock was not an employee of DMC" and "[s]he never read and understood any documentation that informed her Dr. Brock was not an employee or agent of DMC." The opposition summed up Magallanes's position as follows: "The Motion for Summary Judgment should be denied because a triable issue of fact exists regarding the issue of whether plaintiff was provided actual notice that [Dr. Brock] was an independent contractor and not an agent or employee of defendant DMC."

DMC filed a reply to Magallanes's opposition to its motion for summary judgment. In its reply, DMC stated: "Plaintiff alleges one cause of action for medical negligence, which Plaintiff concedes is based solely on allegations of ostensible agency related to a total vaginal hysterectomy performed by Dr. Brock on June 27, 2016. Plaintiff alleges she suffered injuries due to the negligent procedure performed by Dr. Brock. Plaintiff's theories

6.

of liability as to DMC are without merit. DMC has supportive expert opinions related to standard of care and causation for its employees, and Plaintiff now concedes that no direct liability issues exist. Further, as a matter of law, Ostensible Agency is inapplicable to this case, as Dr. Brock was Plaintiff's personal physician for the scheduled (non-emergen[cy]) surgery and Plaintiff could not have reasonably relied upon an apparent agency since Plaintiff presented to the hospital solely due to her relationship with her physician that was independent of the hospital." (Unnecessary capitalization omitted, fn. omitted.) The reply further stated: "[Plaintiff's] [o]pposition is completely devoid of any argument, law, or any reference to the fact that Plaintiff was **treated by her own personal physician**, who was the only reason that Plaintiff came to DMC. Whether or not Plaintiff could understand a Conditions of Admission form—which she had been signing in English for decades without objection—the fact that she was treated by her own personal physician means Plaintiff cannot succeed." (Emphasis in original.)

The trial court granted summary judgment in favor of DMC. The trial court's order stated:

> "Defendant, as the moving party, met the initial burden of demonstrating entitlement to judgment on the issues presented. The burden then shifts to Plaintiff to produce admissible evidence establishing a material factual dispute preventing adjudication of the subject issues. Here, Plaintiff does not oppose Defendant's evidence establishing that the nurses and technicians in its employ met the standard of care with regard to her treatment, and Defendant is entitled to adjudication of that issue.

> "Plaintiff opposed the motion on the sole issue of whether the hospital might nevertheless by held liable for Dr. Brock's conduct under an ostensible agency theory. In that regard, Plaintiff submitted evidence that the hospital's notice to her regarding the nature of the relationship between it and the physicians practicing there was not provided to her in Spanish, either in writing or via verbal translation of the subject notification into Spanish by the hospital's interpreter. Therefore, it appears that Plaintiff has established the existence of a factual dispute with regard to whether the hospital provided her with actual notice relative to this issue. However, the law dictates that the application of ostensible agency may likewise be defeated by evidence that the patient had a pre-existing relationship with the subject physician and

7.

sought treatment based on the relationship, as opposed to looking to the hospital to provide medical services in the first instance. (See, e.g., *Markow v. Rosner* (2016) 3 Cal.App.5th 1027.) The Court finds that the undisputed evidence supports the conclusion that Plaintiff had a longstanding physician-patient relationship with Dr. Brock, sought treatment for the complaints which led to the subject procedure from Dr. Brock as her personal physician, and reported to the hospital for the subject procedure as scheduled and directed by Dr. Brock and/or her office. [Citations.] Therefore, these undisputed facts support the conclusion that Plaintiff knew or should have known that Dr. Brock was not employed by Defendant as a matter of law."

Judgment was entered in DMC's favor on November 4, 2020. This appeal followed.

## DISCUSSION

### I.    Trial Court Properly Granted DMC's Motion for Summary Judgment

The trial court evaluated the relevant record and determined it was indisputable that "Plaintiff knew or should have known that Dr. Brock was not employed by Defendant." The trial court further concluded that Magallanes's medical malpractice claim against DMC (based on an ostensible or apparent agency theory) was therefore precluded as a matter of law and granted DMC's motion for summary judgment. Magallanes asserts that "DMC [is] liable for Dr. Brock's negligence under a theory of ostensible agency," and challenges the trial court's determinations and disposition. We affirm the trial court's conclusions and grant of summary judgment to DMC.

"We review the trial court's grant of summary judgment de novo and decide independently whether the parties have met their respective burdens and whether facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Jessen v. Mentor Corp* (2008) 158 Cal.App.4th 1480, 1484.)

" 'A hospital is liable for a physician's malpractice when the physician is actually employed or is the ostensible agent of the hospital.' " (*Whitlow v. Rideout Memorial Hospital* (2015) 237 Cal.App.4th 631, 635, 636 ["The doctrine of ostensible [or apparent] agency was utilized as a mechanism to impose liability on hospitals for the negligence of independent contractor physicians."].) In *Mejia v. Community Hospital of San Bernardino*

8.

(2002) 99 Cal.App.4th 1448 (*Mejia*), the court laid out the required elements of ostensible agency: "(1) conduct by the hospital that would cause a reasonable person to believe there was an agency relationship, and (2) reliance on that apparent agency relationship by the plaintiff." (*Id*. at p. 1457.)

*Mejia*, *supra*, 99 Cal.App.4th at page 1458, observed that California law has "inferred ostensible agency from the mere fact that the plaintiff sought treatment at the hospital without being informed that the doctors were independent contractors." "Thus, unless the patient had some reason to know of the true relationship between the hospital and the physician—i.e., because the hospital gave the patient actual notice or because the patient was treated by his or her personal physician—ostensible agency is readily inferred." (*Id*. at pp. 1454-1455.) *Mejia's* exposition of the principles of ostensible or apparent agency was reiterated in *Wicks v. Antelope Valley Healthcare District* (2020) 49 Cal.App.5th 866, 884. *Wicks* stated: "[A]lthough a hospital may not control, direct or supervise physicians [providing services on site], a hospital may be liable for their negligence on an ostensible agency theory, unless (1) the hospital gave the patient actual notice that the treating physicians are not hospital employees, and (2) there is no reason to believe the patient was unable to understand or act on the information, or (3) the patient was treated by his or her personal physician and knew or should have known the true relationship between the hospital and physician." (*Ibid*.)

*Markow v. Rosner* (2016) 3 Cal.App.5th 1027 (*Markow*) also summed up the law regarding ostensible agency in the context of a medical malpractice claim. *Markow* stated: "Where a patient seeks to hold a hospital liable for the negligence of a physician, the doctrine of ostensible agency is now commonly expressed as having two elements: '(1) conduct by the hospital that would cause a reasonable person to believe that the physician was an agent of the hospital, and (2) reliance on that apparent agency by the plaintiff.' [Citation.] Generally the first … element is satisfied 'when the hospital "holds itself out" to the public as a provider of care,' 'unless it gave the patient contrary notice.' [Citation.]

9.

Nonetheless, a hospital's 'contrary notice' may be insufficient 'to avoid liability in an emergency room context, where an injured patient in need of immediate medical care cannot be expected to understand or act upon that information.' [Citation.] [As for the second element,] [r]eliance upon an apparent agency is demonstrated 'when the plaintiff "looks to" the hospital for services, rather than to an individual physician.' " (*Id*. at p. 1038.)

*Markow*, *supra*, concluded: "Ultimately, 'there is really only one relevant factual issue: whether the patient had reason to know that the physician was not an agent of the hospital. As noted above, hospitals are generally deemed to have held themselves out as the provider of services unless they gave the patient contrary notice, and the patient is generally presumed to have looked to the hospital for care unless he or she was treated by his or her personal physician. Thus, unless the patient had some reason to know of the true relationship between the hospital and the physician—i.e., because the hospital gave the patient actual notice or because the patient was treated by his or her personal physician— ostensible agency is readily inferred.' " (3 Cal.App.5th at p. 1038.)

"Although the existence of an agency relationship is usually a question of fact, it 'becomes a question of law when the facts can be viewed in only one way.' " (*Markow*, *supra*, 3 Cal.App.5th at p. 1039.) "In the physician-hospital-patient context, ostensible agency is a factual issue '[u]nless the evidence conclusively indicates that the patient should have known that the treating physician was not the hospital's agent, such as when the patient is treated by his or her personal physician' or received actual notice of the absence of any agency relationship." (*Ibid*.; see *Mejia*, *supra*, 99 Cal.App.4th at p. 1458.)

Here, the undisputed facts show that, in 2015, Magallanes selected and established care with Dr. Brock, who was an employee of GVHC. Since that time, Dr. Brock had consistently provided gynecological healthcare for Magallanes as her personal physician (for such healthcare). Magallanes repeatedly sought Dr. Brock's services at the Golden Valley Health Center – Women's Health, a distinct entity from Doctors Medical Center.

Magallanes elected to proceed with a hysterectomy surgery under guidance from Dr. Brock, as part of a continuum of care for the gynecological problems she was experiencing. Dr. Brock/GVHC scheduled the surgery and selected the venue for the surgery and notified Magallanes accordingly. Dr. Brock subsequently performed the surgery and approved Magallanes's initial discharge.

Given the foregoing undisputed facts, this was not a situation where Magallanes "looked to the hospital" for surgical care and relied on the hospital's selection or assignment of a doctor to identify and render appropriate treatment. (See *Markow*, *supra*, 3 Cal.App.5th at p. 1038.) In other words, Magallanes, a pre-existing patient of Dr. Brock, did not rely on an apparent agency relationship between DMC and Dr. Brock in seeking and receiving surgical care from Dr. Brock. Rather, Magallanes, herself chose Dr. Brock as her treating physician and elected to undergo the procedure at issue under the guidance of Dr. Brock and on the condition that it would be performed by Dr. Brock. These undisputed facts conclusively establish that, under the circumstances, Magallanes *reasonably should have known* that Dr. Brock was not an agent of the hospital; rather, she utilized the hospital's surgical facilities to provide surgical care to her own patients. (See, e.g., *Markow*, *supra*, 3 Cal.App.5th at p. 1041.) Magallanes's statement at deposition to the effect that, "if you get sent [to a hospital], you just assume [your preexisting and preselected physician] works there," does not affect our analysis.

The trial court correctly determined the undisputed facts established, as a matter of law, that Magallanes reasonably should have known that Dr. Brock was not DMC's agent. Further, the court appropriately concluded that Magallanes's medical malpractice claim against DMC, a claim that was premised on an ostensible agency theory, was foreclosed as a matter of law. The court therefore properly granted summary judgment in favor of DMC.

Magallanes further argues the trial court's grant of summary judgment was improper because her cause of action for medical negligence encompassed additional theories under which DMC was potentially directly liable for the injuries she sustained as a result of the

11.

hysterectomy procedure performed by Dr. Brock.  This argument is not well taken because any putative additional theories were not addressed in Magallanes's opposition to DMC's motion for summary judgment and were not brought to the attention of the trial court.  (See *American Continental Ins. Co. v. C. & Z Timber Co*. (1987) 195 Cal.App.3d 1271, 1281 ["[P]ossible theories that were not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal."]; *Ernst v. Searle* (1933) 218 Cal. 233, 240-241 ["A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant."].)

## DISPOSITION

The judgment is affirmed.  DMC is awarded its costs on appeal.

SMITH, J.

WE CONCUR:

HILL, P. J.

PEÑA, J.

Filed 7/5/22

**CERTIFIED FOR PUBLICATION**

IN THE

**COURT OF APPEAL OF THE STATE OF CALIFORNIA**

IN AND FOR THE

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| ELISA MAGALLANES DE VALLE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DOCTORS MEDICAL CENTER OF MODESTO, <br><br> Defendant and Respondent. | F082099 <br><br> (Super. Ct. No. 2026884) <br><br><br> **ORDER GRANTING REQUEST FOR PUBLICATION** |

As the nonpublished opinion filed on June 24, 2022, in the above-entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

SMITH, J.

WE CONCUR:


HILL, P.J.


PENA, J.