Filed 9/10/24 P. v. Ramirez CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JUAN CARLOS RAMIREZ,<br><br>Defendant and Appellant. | F085817<br><br>(Super. Ct. No. VCF285147)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County. Nathan G. Leedy, Judge.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING OPINION**

Petitioner Juan Carlos Ramirez petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for attempted murder (§§ 187, subd. (a), 664). The trial court denied the petition at the prima facie stage after determining petitioner's request for resentencing relief was "conclusively refuted by the information contained in the preliminary hearing transcript, the police reports, as well as [petitioner's] plea to the attempted murder with the [section] 12022.55 special allegation."

On appeal, petitioner contends the record of conviction does not establish he is ineligible for resentencing as a matter of law. We agree with petitioner and reverse.

**FACTUAL BACKGROUND**

We briefly summarize the testimony from the preliminary hearing transcript, while acknowledging that the propriety of the trial court relying on this testimony is a subject of dispute in this appeal. As the People acknowledge, some of the preliminary hearing testimony was hearsay admitted pursuant to subdivision (b) of section 872, which may not be considered in determining a petitioner's eligibility for resentencing pursuant to section 1172.6. (§ 1172.6, subd. (d)(3) ["The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony . . . . However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule."]; see *People v. Flores* (2022) 76 Cal.App.5th 974, 988 (*Flores*) ["If such evidence may not be considered at an evidentiary hearing to determine a petitioner's

_____

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

2.

ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage."].)

However, we need not precisely parse the preliminary hearing testimony for admissibility. As explained below, nonhearsay testimony admitted at the preliminary hearing creates a factual dispute regarding petitioner's involvement in the crime and is sufficient to warrant issuance of an order to show cause. That testimony is as follows.

On May 3, 2013, M.C.[2] was staying with her then-boyfriend, M.M., at a hotel in Visalia. The couple went across the street to get food at a gas station and, while there, M.C. noticed one person enter and exit the store. When the couple left the store to walk back to the hotel, a man approached them and said, "Be careful because they want to get you guys." Once the couple reached the balcony of the hotel, someone began yelling at them. The person asked M.M. where he was from and he responded, "I'm not into that anymore." M.M. had tattoos on his face and the person asked, "Then what's that on your face?" M.M. said something M.C. could not recall and the person began shooting from the passenger side of an older, black, two-door sport utility vehicle, such as a Tahoe or Yukon. M.C. was shot in the leg. M.C. had not seen the car or the people in it before. During his investigation, Visalia Police Detective J. Cummings observed five .40-caliber expended shell casings in the parking lot and two bullet strike marks in the wall of the hotel.

Law enforcement obtained surveillance video from the gas station store and captured a still photograph of a man wearing a black T-shirt and a backwards hat. This individual was in the store for 23 seconds. M.C. identified the person in the photograph as the person she had seen inside the store, and also identified him as the shooter.

---

[2] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names or initials. No disrespect is intended.

Law enforcement also obtained surveillance video of the shooting. The video showed a vehicle from which gunshots were fired from the passenger side. Officers subsequently identified a suspect vehicle and determined it belonged to petitioner's brother, Rafael. Cummings obtained Rafael's driver's license photograph and determined it looked "very similar" to the suspect who appeared in the gas station video. Cummings put Rafael's photograph into a photographic lineup and showed it to M.C., who identified Rafael as the shooter.

Subsequently, law enforcement executed a warrant at a residence in Visalia and arrested Rafael. As a result of information obtained from others at the residence, officers also arrested petitioner. A vehicle located at the residence appeared to be consistent with that seen in the video of the shooting.

Approximately one week after the initial lineup, M.C. was shown a second lineup, where she identified a different person as the shooter.[3] She acknowledged that she read a newspaper article concerning the case that included a photograph of someone who was identified as having been arrested for the shooting. She acknowledged that the photograph from the newspaper was "the same one" as the photograph she identified in the second photographic lineup. She could not recall whether she saw the newspaper article before or after she made the identification.

After petitioner was arrested, Cummings showed him the surveillance video. Cummings testified regarding this interaction in relevant part as follows:

---

[3] In the trial court, the People asserted the second identification was of petitioner. However, the pages of the preliminary hearing transcript relied on by the People to support this assertion do not reference petitioner. As stated, M.C. testified only that the person she identified in the second lineup was not the same person she identified in the first lineup. M.C. did not identify petitioner in court and no law enforcement officer testified that petitioner was the person portrayed in the second lineup. On appeal, the People do not contend M.C. identified petitioner in the second lineup.

4.

"Q. Did [petitioner] eventually indicate that yes that was him in the photo?

"A. He did by saying – I asked him specifically at the time of the video – whenever he entered the store, there is a . . . male behind him. I asked him, 'Is that person with you?' And he said, 'No. He wasn't with me. He just came in behind me,' referring to the photograph I showed him."

A gang expert opined that the shooting was gang motivated.

## PROCEDURAL HISTORY

On March 23, 2015, petitioner was charged by information with two counts of premeditated attempted murder (§§ 187, subd. (a), 664; counts 1–2), and two counts of maliciously shooting at a person from a vehicle (§ 26100, subd. (c); counts 3–4). As to counts 1 and 2, the information included a gang allegation pursuant to section 186.22, subdivision (b)(5), and as to counts 3 and 4, the information alleged a gang enhancement pursuant to section 186.22, subdivision (b)(1)(C). As to counts 1 and 2, the information alleged a firearm enhancement pursuant to section 12022.55 and, as to all counts, the information alleged firearm enhancements pursuant to section 12022.53, subdivisions (b), (c), (d), and (e)(1).

On June 5, 2018, pursuant to a plea agreement, petitioner entered a plea of no contest on an amended count 1 to attempted murder without premeditation as to both M.C. and M.M. Petitioner admitted a firearm enhancement pursuant to section 12022.55 and an amended gang allegation pursuant to section 186.22, subdivision (b)(1)(C). The prosecutor and defense counsel stipulated that the preliminary hearing transcript and police reports provided a factual basis for the plea. The remaining counts and allegations were dismissed. Petitioner was sentenced to a stipulated prison term as follows: an aggravated term of nine years on count 1, plus an additional five years for the firearm enhancement and an additional 10 years for the gang enhancement.

On December 16, 2022, petitioner filed a petition for resentencing pursuant to section 1172.6. Counsel was appointed to represent him.

The People opposed the petition on the ground the preliminary hearing transcript and police reports established petitioner was the actual shooter. The People asserted: "[Petitioner] was the sole perpetrator of the crime who personally and intentionally used a firearm to assault the victims and acted with reckless indifference to human life. Since . . . petitioner acted with intent to kill, he is ineligible for relief as a matter of law."

In response, petitioner pointed out that the preliminary hearing showed that two perpetrators were involved in the offense: the driver of the vehicle and the shooter. Additionally, petitioner pointed out that M.C. initially identified petitioner's brother as the shooter. Accordingly, petitioner argued, the People could have proceeded against petitioner under a natural and probable consequences theory based on petitioner having only the intent to assault or threaten the victims, rather than his having an intent to kill. He argued that neither his plea to attempted murder, his stipulation to a factual basis for the plea, nor his admission of the firearm enhancement established that he harbored the intent to kill. As such, petitioner argued, he was entitled to an order to show cause.

The matter was heard on February 16, 2023. The court noted that petitioner had filed a facially sufficient petition but that his conclusory allegations were rebutted by the preliminary hearing transcript, police reports, plea to attempted murder, and admission of the firearm allegation. The court noted, "The facts more or less established that there was one individual who encountered the victims in a gas station convenience mart, then followed them outside and fired shots at them." According to the court, that one person was identified as petitioner. The court also noted that the admitted firearm allegation required "intent to inflict . . . great bodily injury and death."[4] On that basis, the petition was denied.

_____

[4] However, section 12022.55 requires "the intent to inflict great bodily injury *or* death." (Italics added.)

## DISCUSSION

### I.    Section 1172.6 Procedure

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) "altered the substantive law of murder in two areas." (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).) First, the bill narrowed the scope of the felony-murder rule "so that a 'participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs' can be liable for murder only if '[t]he person was the actual killer'; '[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree'; or '[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life.' " (*People v. Arellano* (2024) 16 Cal.5th 457, 467–468, quoting § 189, subd. (e)(1)–(3).) Second, the bill "eliminate[d] liability for murder as an aider and abettor under the natural and probable consequences doctrine" by requiring that, "except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder." (*Curiel*, at p. 449, quoting § 188, subd. (a)(3).) Now, " '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Curiel*, at p. 449.)

Additionally, Senate Bill No. 1437 added former section 1170.95, now section 1172.6, to provide a procedure for those convicted of a qualifying offense " 'to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel*, *supra*, 15 Cal.5th at p. 449.) Subsequently, Senate Bill No. 775 (2021–2022 Reg. Sess.) expanded the scope of these ameliorative provisions to "clarif[y] that persons who were convicted of attempted murder or manslaughter" are permitted the same relief as those convicted of murder. (Stats. 2021, ch. 551, § 1, subd. (a); accord, *People v. Arellano*, *supra*, 16 Cal.5th at p. 468, fn. 3.)

Under section 1172.6, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); accord, *People v. Strong* (2022) 13 Cal.5th 698, 708.) If the sentencing court determines the petitioner has made a prima facie showing, the court must issue an order to show cause and hold a hearing to determine whether to vacate the petitioner's murder, attempted murder, or manslaughter conviction. (§ 1172.6, subds. (c), (d)(1).) However, " '[i]f the petition and record in the case establish conclusively that the [petitioner] is ineligible for relief, the trial court may dismiss the petition.' " (*Curiel*, *supra*, 15 Cal.5th at p. 450.)

## II.    Nature of the Prima Facie Inquiry

Our Supreme Court has emphasized that "the prima facie inquiry . . . is limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) "[T]he 'prima facie bar was intentionally and correctly set very low.' " (*Id.* at p. 972.) The court may not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion' " at the prima facie stage. (*Ibid*.) "Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971.)

We review the court's prima facie inquiry de novo. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

**III.    Analysis**

Petitioner argues the court erred in denying the petition at the prima facie stage because nothing in the record establishes he is ineligible for resentencing as a matter of law.  He contends the court erred in determining his admission of the firearm allegation included an admission that he acted with intent to kill.  He further contends his counsel's stipulation to the preliminary hearing transcript as a factual basis for the plea did not constitute an admission that the evidence presented therein was true or establish as a matter of law that he acted with intent to kill.

We begin with the undisputed proposition that, absent additional facts, petitioner's plea to attempted murder and admission of the section 12022.55 firearm enhancement do not establish his ineligibility for resentencing as a matter of law.  We therefore must consider whether the preliminary hearing evidence provides the additional facts necessary to establish that petitioner is ineligible for resentencing as a matter of law.[5]

Courts of Appeal are split on the role of preliminary hearing evidence in establishing a petitioner's ineligibility for resentencing at the prima facie stage.  (*People v. Williams* (2024) 103 Cal.App.5th 375, 389–394 (*Williams*) [collecting cases].)  Our Supreme Court has granted review to resolve this issue.  (*People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670 (*Patton*)[6].)  We briefly review the relevant case law.

*People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166–1168 held that a preliminary hearing transcript established the petitioner was ineligible for resentencing as a matter of

---

[5] Although the trial court stated it also relied on police reports to determine petitioner was ineligible for resentencing, the People no longer contend that doing so was proper.  Instead, they argue doing so was harmless.  We therefore do not consider whether the police reports establish petitioner is ineligible for resentencing as a matter of law.

[6] Our Supreme Court has granted review in *Patton* to determine whether the trial court engaged in impermissible judicial factfinding by relying on the preliminary hearing transcript to deny a section 1172.6 petition at the prima facie stage.  (*People v. Patton* (June 28, 2023, S279670).)

law, where the petitioner was prosecuted as a direct aider and abettor and no felony murder or natural and probable consequences theory was considered in holding the petitioner to answer. In *People v. Rivera* (2021) 62 Cal.App.5th 217, 236–239, the court declined to follow *Nguyen* and held that, because the petitioner did not admit to the truth of any evidence presented at the grand jury, the grand jury evidence could not demonstrate that the petitioner was ineligible for resentencing as a matter of law. In *Flores*, *supra*, 76 Cal.App.5th at pages 991–992, a panel of this court held that the petitioner did not admit the truth of the preliminary hearing testimony and, in any event, the preliminary hearing testimony left open the possibility he was convicted under a now-invalid theory of aider and abettor liability and thus did not establish ineligibility for resentencing as a matter of law.

More recently, in *Patton*, the court held that uncontroverted testimony at the preliminary hearing established the petitioner was "the sole and actual perpetrator of the attempted murder" and therefore ineligible for resentencing as a matter of law. (*Patton*, *supra*, 89 Cal.App.5th at p. 657, review granted.) Likewise, in *People v. Pickett* (2023) 93 Cal.App.5th 982, review granted October 11, 2023, S281643 (*Pickett*), the court held that the preliminary hearing transcript established the petitioner's ineligibility for resentencing as a matter of law, where the preliminary hearing transcript contained "nothing to suggest that any other person was involved in the incident" (*id*. at p. 990) and the petitioner did not allege any facts concerning the killing, deny he was the actual killer, assert another person fired the fatal shot, or allege he acted without intent to kill (*id.* at p. 989). Similarly, in *People v. Mares* (2024) 99 Cal.App.5th 1158, review granted May 1, 2024, S284232 (*Mares*), the court held that a preliminary hearing transcript which showed the People were pursuing only an actual killer theory was sufficient to defeat the conclusory allegations of resentencing eligibility contained in the petitioner's petition. (*Id.* at p. 1166.) Most recently, however, in *Williams*, *supra*, 103 Cal.App.5th at pages 397–403, a divided panel of this court rejected the reasoning of *Patton*, *Pickett*, and

10.

*Mares*, and held that a preliminary hearing transcript cannot conclusively establish a petitioner was convicted under a valid theory. The dissent in *Williams* would have held to the contrary. (*Id.* at pp. 406–426 (dis. opn. of Meehan, J.).)

We need not resolve this split of authority in the instant case, as we would reach the same result under either line of authority.[7] Under the reasoning of *Williams*, *Flores*, and *Rivera*, the preliminary hearing evidence cannot establish that petitioner was convicted under a valid theory of attempted murder. Meanwhile, under the reasoning of *Patton*, *Pickett*, and *Mares*, as well as the dissent in *Williams*, conflicts in the evidence presented at the preliminary hearing are sufficient to create a factual issue regarding petitioner's role in the offense that can only be resolved through an evidentiary hearing. Notably, the decisions in *Patton*, *Pickett*, and *Mares*, as well as the dissent in *Williams*, were predicated on uncontroverted preliminary hearing testimony that the petitioner was the sole and direct perpetrator of the relevant offense. (*Williams*, *supra*, 103 Cal.App.5th at pp. 411–412 (dis. opn. of Meehan, J.) [evidence showed petitioner was the direct perpetrator acting alone]; *Mares*, *supra*, 99 Cal.App.5th at pp. 1161–1162, review granted [police testified to the petitioner's admissions to stabbing the victim and acting alone]; *Pickett*, *supra*, 93 Cal.App.5th at p. 986, review granted ["There was no evidence suggesting that anyone other than [the petitioner] was involved in [the victim's] death."]; *Patton*, *supra*, 89 Cal.App.5th at pp. 652–653, 657, review granted [based on law enforcement testimony that surveillance video showed a man they knew to be the petitioner walking up to the victim and shooting him, the court determined the petitioner

---

[7] Any further exploration of the issue is unnecessary to our resolution of the appeal and would therefore constitute dictum. (Black's Law Dict. (12th ed. 2024) [defining "obiter dictum" as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)."]; see Black's Law Dict. (12th ed. 2024) [defining "judicial restraint" to refer to the principle that, "when a court can resolve a case based on a particular issue, it should do so without reaching unnecessary issues"].)

was "the sole and actual perpetrator of the attempted murder"].) Because the evidence was uncontroverted, it could rebut the factual allegations of the petition without requiring the trial court to resort to improper factfinding at the prima facie stage. (*Williams*, at p. 415 (dis. opn. of Meehan, J.); *Mares*, at pp. 1170–1171; *Pickett*, at p. 990; *Patton*, at p. 658.)

In contrast, here, the preliminary hearing evidence does not unequivocally identify petitioner as that direct perpetrator, inasmuch as M.C. identified at least two different people as the shooter. Moreover, the evidence does not suggest the shooter acted alone, but rather in association with a second person in the vehicle. Because conflicting evidence was presented at the preliminary hearing regarding the identity of the shooter and thus petitioner's role in the offense, the evidence leaves open the possibility that petitioner was convicted under an imputed malice theory eliminated by Senate Bill No. 1437. This conflict in the evidence cannot be resolved absent factfinding by the trial court. (See *People v. Estrada* (2024) 101 Cal.App.5th 328, 340 [where preliminary hearing transcript contains testimony that "could potentially suggest multiple perpetrators were involved," the testimony does not conclusively establish the petitioner was " 'the actual killer, acted with intent to kill or actual malice, or was a major participant in an underlying crime who acted with reckless indifference to human life' without making factual findings and credibility determinations"]; *Flores*, *supra*, 76 Cal.App.5th at pp. 991–992 ["To find petitioner ineligible for resentencing on this record would require judicial factfinding, which is impermissible at the prima facie stage."].)

In sum, even if it is permissible for a trial court to rely on preliminary hearing evidence at the prima facie stage, as *Patton*, *Pickett*, and *Mares* suggest, the evidence in the instant case does not establish petitioner's ineligibility for resentencing as a matter of law. Accordingly, the petition was improperly denied and the order denying the petition must be reversed.

## **DISPOSITION**

The court's order denying the section 1172.6 petition for resentencing is reversed and the matter is remanded with directions to issue an order to show cause (§ 1172.6, subd. (c)), and to conduct such proceedings as necessary under section 1172.6, subdivision (d).

DETJEN, Acting P. J.

I CONCUR:


FRANSON, J.

MEEHAN, J., Concurring.

I concur in the disposition reached by the majority. However, I respectfully write separately to clarify several points given this court's recent decision in *Williams*, which, like this case, involves the trial court's denial of a Penal Code section 1172.6[1] petition at the prima facie stage of review where the petitioner was convicted by a plea entered after the preliminary hearing. (*People v. Williams* (2024) 103 Cal.App.5th 375 (*Williams*).)

In *Williams*, the majority held that the rule articulated by the California Supreme Court in *Curiel* controls whether the petition may be denied at the prima facie stage, even in plea cases where the preliminary hearing transcript reflects, without dispute, that the petitioner was the direct perpetrator acting alone. (*Williams, supra*, 103 Cal.App.5th at p. 396, citing *People v. Curiel* (2023) 15 Cal.5th 433, 460, 463, 465 (*Curiel*).) The majority stated unequivocally, "*Curiel* sets forth the test for determining *whether* 'bare petition allegations' [citation] are conclusively refuted by the record of conviction" (*Williams, supra*, at p. 395, fn. 9, citing *Curiel, supra*, at p. 463), "which showing is not made 'unless the record conclusively establishes every element of the offense' under a valid theory" (*Williams, supra*, at p. 396, quoting *Curiel, supra*, at p. 463). The majority "acknowledge[d] the high court's holding regarding the specific inferences that could be drawn from the jury instructions in *Curiel* was limited to the facts of that case" (*Williams, supra*, at p. 395, fn. 9, citing *Curiel, supra*, at p. 471), but nevertheless concluded "the high court's discussion of the applicable law was not so limited, and nothing in *Curiel* suggests the court would apply a different test to a different set of facts" (*Williams, supra*, at p. 395, fn. 9).

Even though the factual circumstances in *Williams* bear no similarity to those in *Curiel*, and the Supreme Court expressly limited *Curiel* to its facts, the majority in *Williams* opined that *Curiel* applies broadly, concluding that the factual allegations in a

---

[1] All further statutory references are to the Penal Code, unless otherwise stated.

facially sufficient petition, "if true, are sufficient to entitle the petitioner to relief and necessarily 'put[] at issue all elements of the offense under a valid theory'" (*Williams, supra*, 103 Cal.App.5th at p. 404, quoting *Curiel, supra*, 15 Cal.5th at p. 462), and "a petitioner who has made the factual allegations required by section 1172.6 is entitled to an order to show cause unless readily ascertainable facts from the record conclusively establish the petitioner was convicted under a valid theory" (*Williams, supra*, at p. 404, citing *Curiel, supra*, at pp. 463, 467 & *People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*)). *Williams* further concluded, "A preliminary hearing transcript does not conclusively establish a theory of guilt and thus is insufficient to rebut the petitioner's factual allegations, even if the transcript suggests the prosecution pursued only a direct perpetrator theory of murder or attempted murder at the preliminary hearing." (*Williams, supra*, at p. 404.)

The extension of the rule in *Curiel* to plea cases has far reaching implications. Because a petitioner seeking relief under section 1172.6 is not required to plead facts and may initiate the process by using a Judicial Council check-box form, most petitions, including the one in *Williams* and the one here, will be *bare* of specific facts. Thus, the extension of the *Curiel* rule beyond its factual parameters results in its application to most petitions, absent specific factual admissions or stipulations.

Therefore, it is unclear to me why, in this postpreliminary hearing plea case, the majority declines to apply the rule articulated in *Williams* and resolves the matter with reference to the preliminary hearing transcript without requiring, or at least addressing, proof of a theory of guilt. The majority instead concludes that it is unnecessary to "resolve this split of authority" (maj. opn. *ante*, at p. 11)[2] concerning the role preliminary

---

[2]    The dissenting opinion in *Williams* noted its view is in accord with holdings in *People v. Patton* (2023) 89 Cal.App.5th 649, 656–658, review granted June 28, 2023, S279670, *People v. Pickett* (2023) 93 Cal.App.5th 982, 990, review granted October 11, 2023, S281643, and *People v. Mares* (2024) 99 Cal.App.5th 1158, 1161, review granted May 1, 2024, S284232). (*Williams, supra*, 103 Cal.App.5th at p. 409, fn. 4 (dis. opn. of

2.

hearing transcripts do or do not play in prima facie review because "even if it is permissible for a trial court to rely on preliminary hearing evidence at the prima facie stage, … the evidence in the instant case does not establish petitioner's ineligibility for resentencing as a matter of law" (maj. opn., *ante*, at p. 12).[3] The Fifth District is not in a neutral position, however, having already weighed in and articulated the applicable standard. (*Williams, supra*, 103 Cal.App.5th at p. 396.) The majority's conclusion in this case is a marked departure, analytically, from the rule announced in *Williams* and, as a result, it frustrates the goals of clarity and consistency in an area of the law that is already particularly susceptible to substantial confusion and disagreement.

The clear implication of the majority opinion in this case is that application of the *Curiel* standard adopted in *Williams* is not necessary and does not require broad application. This is consistent with the *Williams* dissent and, therefore, I agree, but the rationale for departing from *Williams* and reviewing the preliminary hearing transcript to determine whether there are factual disputes precluding dismissal at the prima facie stage is not apparent. Although the majority suggests that the plea case here is distinguishable from the one in *Williams*, it does not explain why this distinction justifies application of the *Curiel* rule in one but not the other. In *Lewis*, the high court stated, "[T]he prima facie inquiry under [section 1172.6,] subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner

---

Meehan, J.).) The majority in *Williams* disagreed with *Pickett* and *Patton*, which were decided prior to *Curiel*, and with the more recently decided *Mares*. (*Williams, supra*, at p. 403.)

[3]   The majority states that further exploration of this issue would constitute dictum because it is unnecessary to the disposition in this case. (Maj. opn., *ante*, at p. 11, fn. 7.) Given the ongoing issues among appellate courts concerning what standard or rule applies at the prima facie stage in postpreliminary hearing plea cases, and under what circumstances, and given this court's recent resolution of that issue in *Williams*, I do not agree that discussion of the matter in this case would constitute dictum.

3.

would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause.'"  ([*People v.*] *Drayton* [(2020)] 47 Cal.App.5th [965,] 978, quoting Cal. Rules of Court, rule 4.551(c)(1).)  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  (*Drayton*, at p. 978, fn. omitted, citing *In re Serrano* (1995) 10 Cal.4th 447, 456.)  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'  (*Drayton*, at p. 979, quoting *Serrano*, at p. 456.)"  (*Lewis, supra*, 11 Cal.5th at p. 971; accord, *Curiel, supra*, 15 Cal.5th at p. 460.)

Thus, in all cases, the trial court is tasked with reviewing the record of conviction to determine whether the petitioner may be entitled to relief.  In this case and in *Williams*, the relevant record is the preliminary hearing transcript.  Given the *Williams* holding that the preliminary hearing transcript cannot refute the petition allegations and establish ineligibility for relief under section 1172.6 because it does not conclusively establish a theory of guilt (*Williams, supra*, 103 Cal.App.5th at p. 404), and its characterization of the review of the record of conviction in that case as "engage[ment] in premature factfinding" (*id.* at p. 388), it is unclear to me, as a practical matter, what purpose is served in sifting through a preliminary hearing transcript to determine whether or not there are disputed issues of fact.  If *Curiel* applies and requires the issuance of an order to show cause in a case where the preliminary hearing transcript reflects, without dispute and without any factfinding, that the petitioner was the direct perpetrator acting alone, then it necessarily requires the same in a case where there are disputed issues of fact reflected in the transcript.  I am unable to discern a material distinction between this case and *Williams*, which, as stated, described mere record review in a case where there were no disputed issues of fact as premature factfinding and asserted that a preliminary hearing

transcript cannot establish a theory of guilt, thereby effectively precluding reliance on the preliminary hearing transcript in all cases. (*Williams, supra*, at pp. 388 & 404.)

If, instead, the rule in *Curiel* is controlling, as *Williams* holds, then it may be applied straightforwardly without requiring trial courts or appellate courts to parse through the preliminary hearing transcript looking for the presence or absence of disputed facts in the first instance, an often time consuming task that requires detailed consideration of evidence balanced against the prohibition against factfinding, credibility assessment and evidence weighing, and the exclusion of hearsay evidence introduced through testifying officers unless admissible under an exception. (*Williams, supra*, 103 Cal.App.5th at pp. 409 & 411–412, fn. 6 (dis. opn. of Meehan, J.); *People v. Flores* (2022) 76 Cal.App.5th 974, 988 & fn. 9 (*Flores*).) Instead, the question is simply whether "'the record conclusively establishes every element of the offense' under a valid theory" (*Williams, supra*, at p. 396, quoting *Curiel, supra*, 15 Cal.5th at p. 463), and *Williams* already concluded that, regardless of the presence or absence of disputed facts, "A preliminary hearing transcript does not conclusively establish a theory of guilt and thus is insufficient to rebut the petitioner's factual allegations .…" (*Williams, supra*, at p. 404.)

In my view, while the outcome is different in each case, both may be resolved under the same analytical framework the majority now simply and correctly relies upon. In *Williams*, the preliminary hearing transcript showed only undisputed facts and, in contrast to the instant case, required no factfinding or weighing of the evidence to conclude that petitioner was tried and convicted as the sole perpetrator ineligible for relief as a matter of law. Here, the preliminary transcript does show disputed issues of fact which, as explained by the majority and below, may not be resolved at the prima facie stage. There is no utility to going further and requiring conclusive proof of every element of the offense in either circumstance. Consequently, if *Williams*, adopting the *Curiel* test, was not intended for broad application, there should be some explanation of

the standard's parameters and justification for the disparate treatment of these plea cases to avoid confusion.**4**

Consistent with my dissent in *Williams*, I do not believe *Curiel* has any application in this context and would simply resolve this appeal as follows. (*Williams, supra*, 103 Cal.App.5th at pp. 425–426 (dis. opn. of Meehan, J.).) In contrast with the petitioner in *Williams*, Ramirez has identified support in the record for his claim that he may be eligible for relief under section 1172.6. The record in this case reflects that there were two people involved in the shooting incident and that there is a possibility that Ramirez was the accomplice rather than the shooter. At the preliminary hearing, M.C. testified that she and M.M. were shot at by the passenger in a black SUV, and, in separate instances, she identified Ramirez and another individual as the shooter. For the trial court in this case to conclude that the record of conviction refuted the petition allegations by showing that Ramirez was ineligible for relief as a matter of law because he was the direct perpetrator and lone shooter, the court necessarily engaged in factfinding by discounting the evidence that the other person may have been the shooter.**5** That an

---

**4** "[W]here there is more than one appellate court decision, and such appellate decisions are in conflict," "the court exercising inferior jurisdiction can and must make a choice between the conflicting decisions." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456.) "As a practical matter, a superior court ordinarily will follow an appellate opinion emanating from its own district even though it is not bound to do so." (*McCallum v. McCallum* (1987) 190 Cal.App.3d 308, 315–316, fn. 4.)

**5** The trial court also failed to acknowledge that section 1172.6 precludes reliance on "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 …, unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3); accord, *Flores, supra*, 76 Cal.App.5th at p. 988 & fn. 9.) In this case, the preliminary hearing included testimony by one of the victims, in addition to multiple law enforcement officers. The victim testified the shooter was the passenger in a black SUV and there is no evidence there was more than one shooter. However, the victim testified that she saw two different photo lineups approximately one week apart and she identified a different person in each. Notably, Detective Cummings testified the victim identified the individual in a surveillance camera still photo, whom Officer Jennings testified was identified as Ramirez by his mother, as the shooter, but the

assessment of the weight of the evidence and the credibility of witness testimony might favor finding Ramirez was the shooter misplaces the mark at this stage. The trial court may not put its thumb on the scale at the prima facie stage where, as here, the record reflects a disputed issue of fact concerning whether Ramirez was the shooter or the accomplice.

As the *Williams* dissent contemplated, in many cases, the preliminary hearing transcript may not be definitive at the prima facie review step because the trial court's review is constrained by the prohibition against factfinding, credibility assessment and evidence weighing, and by the exclusion of hearsay evidence introduced through testifying officers unless admissible under an exception. (*Williams, supra*, 103 Cal.App.5th at pp. 409 & 411–412, fn. 6 (dis. opn. of Meehan, J.); *Flores, supra*, 76 Cal.App.5th at p. 988 & fn. 9.) "Cases resolved by plea necessarily have more limited records and will lack the binding and more telling findings made by a trier of fact following a jury or court trial," and, therefore, the record of conviction in any given case might be silent or ambiguous, it might affirmatively support the petition allegations, or it might contain conflicting evidence. (*Williams, supra*, at pp. 407–408 (dis. opn of Meehan, J.).)

Here, the record of conviction does not refute the petition allegations because the preliminary hearing transcript reflects a conflict in the evidence concerning the identity of the shooter. Given this conflict in the record, Ramirez's petition may not be dismissed at the prima facie stage and the trial court erred in concluding otherwise. This result is consistent with the principle that "'[t]he record of conviction will necessarily inform the

---

victim later identified Ramirez's brother from a lineup. Under certain circumstances, some evidence might be admissible under Evidence Code section 1238, the prior identification exception to the hearsay rule, but because the victim's testimony demonstrates there is a disputed issue of fact concerning the identity of the shooter, resolution of this appeal does not require this court to parse the law enforcement witnesses' testimony for admissible and inadmissible hearsay.

trial court's prima facie inquiry …, allowing the court to distinguish petitions with *potential* merit from those that are clearly meritless.'" (*Williams, supra*, 103 Cal.App.5th at p. 414, italics added (dis. opn. of Meehan, J.), quoting *Lewis, supra*, 11 Cal.5th at p. 971 & citing *Curiel, supra*, 15 Cal.5th at pp. 463–464.)

Also, consistent with the dissenting view in *Williams*, it is unnecessary to rely on the rule articulated in *Curiel* to resolve this appeal.[6] As stated in *Williams*, the rule does not have utility here because this court is not called upon to measure whether the factfinder convicted Ramirez as an accomplice under the valid or the invalid theory of accomplice liability. (*Williams, supra*, 103 Cal.App.5th at pp. 422–424 (dis. opn. of Meehan, J.).) This court is simply determining whether the record of conviction by plea, without resort to impermissible factfinding or reliance on inadmissible hearsay evidence, refutes Ramirez's petition allegation that he "could not presently be convicted of murder

---

[6] As the dissent emphasized in *Williams*, "Courts must take care not to demand too much of the petitioner at the prima facie stage, but they must also not demand so little that the prima facie review is rendered meaningless and direct perpetrator cases with uncontroverted records of conviction move to the next stage based on nothing more than a form petition with the requisite boxes checked. If, under the circumstances in this case, filing a form petition with boxes checked is sufficient to justify an evidentiary hearing, the prima facie review stage is rendered hollow, our high court's express endorsement of limited record review and dismissal of petitions where the record refutes the petition allegations is not given effect, clearly meritless petitions will proceed to an evidentiary hearing, and already swamped trial courts will be needlessly burdened by conducting evidentiary hearings on meritless petitions. This is not a small matter, considering that a significant percentage of cases are resolved by plea [citations] …." (*Williams, supra*, 103 Cal.App.5th at p. 424 (dis. opn. of Meehan, J.), citing *Lafler v. Cooper* (2012) 566 U.S. 156, 170, *Harris v. Superior Court* (2016) 1 Cal.5th 984, 992 & *In re Chavez* (2003) 30 Cal.4th 643, 654, fn. 5.) It is because consideration and resolution of petitions under section 1172.6 in cases such as this are no small matter that I feel compelled to write separately. In my view, for the sake of courts and parties, any applicable tests or rules articulated should be applied clearly and consistently. The holding in *Williams* was grounded not in whether the record of conviction, specifically the preliminary hearing transcript, did or did not evidence any disputed issues of fact, but whether the record conclusively established all of the elements of the offense under a valid theory. (*Williams, supra*, 103 Cal.App.5th at p. 404.)

or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) Because the preliminary hearing transcript reflects a disputed issue of fact concerning whether Ramirez was the direct perpetrator or the accomplice in the shooting, his petition may not be dismissed at the prima facie stage. It may be that Ramirez is not entitled to relief under section 1172.6, but he has met the low bar at this stage.

Therefore, I concur with the majority's disposition in this case, but on the specific grounds set forth herein.


MEEHAN, J.